UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20822-CR-WILLIAMS/TORRES(s)

UNITED STATES OF AMERICA

v.

JESUS MANUEL MENOCAL, JR.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OPPOSITION TO
GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE
PURSUANT TO FEDERAL RULES OF EVIDENCE 413 AND 404(b)**

The United States hereby responds to the defendant's Opposition to Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) and Motion for Evidentiary Hearing (DE: 40) ("Opposition"). As explained below, it is the government's position that all of the evidence detailed in its Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) (DE: 37) ("Notice") is admissible and the evidentiary hearing requested by the defendant is neither required by the law nor necessary under the facts and circumstances of this case. Moreover, the government hereby readopts and reincorporates its Notice in full as part of this response.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 12, 2019, a federal grand jury returned an Indictment (DE: 3) charging the defendant with two counts of willfully depriving victims of the right to be free from unreasonable searches and seizures by a person acting under color of law, in violation of 18 U.S.C. § 242. Count 1 charges that on or about June 13, 2015, the defendant, for his own sexual gratification, directed Victim 1 to remove her shorts and underwear and turn around. Count 2 charges that during an incident that occurred between January 1, 2015 and March 31, 2015, the defendant exposed his bare penis to Victim 2, placed her hand on it, and kissed her.

On May 27, 2020, the government filed a Superseding Information (DE: 25), charging the defendant with violating 18 U.S.C. § 242 by willfully depriving Victim 3 of that same right to be free from unreasonable searches and seizures by a person acting under color of law, during an incident that occurred on May 31, 2015.   In that incident, the defendant is charged with causing Victim 3's mouth to have contact with his penis.

As the Indictment and Superseding Information allege, the defendant was a police officer who criminally abused his power and position to obtain sexual gratification from a number of young women in violation of their Fourth Amendment right to be free from unreasonable searches and seizures.   At the time of the charged conduct, the defendant was a Sergeant with the Hialeah Police Department ("HPD") assigned to Sector 5 of the city of Hialeah.   In his position, the defendant worked in uniform and drove a marked HPD vehicle, and had keycard access to HPD Substation 5.   Substation 5 was a facility that was not regularly staffed or open to the public. Instead, access was limited to HPD personnel and those escorted by HPD personnel for limited official HPD purposes.   The charged incidents involving Victim 1 and Victim 3 both took place inside Substation 5, while the charged incident involving Victim 2 took place in the evening in a deserted industrial-type area in Hialeah.   In all three of these incidents, the defendant was in uniform and armed when he unlawfully exercised his police authority over these young female victims for his own sexual gratification.

On August 10, 2020, the government filed its Notice setting out the evidence it was seeking to offer under Rule 413 and/or Rule 404(b).   The proffered evidence was described in detail in the Notice, and that detail is not repeated in this response.   In summary, the evidence the government seeks to introduce pursuant to Rule 413 is evidence establishing the defendant's other acts of sexual assault against Victim 4 and Victim 5.   The evidence the government seeks to introduce

pursuant to Rule 404(b) concerns the 1) defendant's sexual relationship with C.M., a student trainee at the police academy where the defendant was an instructor, and 2) his actions in May and June of 2015 in bringing a number of young women, after hours and on weekends, into a HPD substation (captured on surveillance video) that was not staffed or open to the public.

On September 14, 2020, the defendant filed his Opposition.  Based on review of the Opposition and consultation with counsel for the defendant, it appears that the defendant is conceding the substantive admissibility, pursuant to Rule 413, of the evidence of the defendant's other acts of sexual assault of Victim 4 and Victim 5.   As such, the Opposition only addresses and challenges the proposed Rule 404(b) evidence, claiming that it is not relevant for any proper purpose under Rule 404(b) and further arguing that even if relevant, the proffered evidence is unduly prejudicial and should be excluded under the Rule 403 balancing test that is part of the Rule 404(b) analysis.

Finally, with little legal support the defendant asks "the Court to hold an evidentiary hearing prior to the admission of any of the evidence within the government's [Notice] because Rule 404(b) requires proof that an act occurred by a preponderance of the evidence . . . and Rule 413 requires proof that a sexual assault occurred under the preponderance of evidence standard." DE 40 at 9.   However, based on Rules 404(b) and 413 and the decisions interpreting these rules, there is no requirement or reason for the Court to hold the requested evidentiary hearing. Moreover, the two cases cited by the defendant to support his request actually support the government's position that an evidentiary hearing is neither necessary nor appropriate.

## LAW AND ARGUMENT

**I.**     **Extrinsic Evidence Under Rule 404(b) in 18 U.S.C. § 242 Cases**

The three offenses in this case charge violations of a civil rights statute, 18 U.S.C. § 242,

which makes it unlawful for those acting under color of law to willfully deprive individuals of their constitutional or federally protected rights.   To establish a violation of § 242, the government must prove the following elements:   (1) the defendant acted under color of law; (2) the defendant deprived another person of a right protected or secured by the Constitution or the laws of the United States; and (3) the defendant acted willfully.   18 U.S.C. § 242.   To establish Counts 1 and 2 of the Indictment, the government must also prove at least one additional element:   (4) either (a) that the act included the use or threatened use of a dangerous weapon, or (b) that such acts included kidnapping.   *Id.*

To prove the willfulness element, the government must establish that the defendant acted with the specific intent "to deprive a person of a right which has been made specific either by the express terms of the Constitution or the laws of the United States or by decisions interpreting them."   *Screws v. United States*, 325 U.S. 91, 104 (1945).   A "willful act" is one committed either "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite," although the defendant need not be aware of the specific constitutional provision or law his conduct violates.   *Id.* at 105-6.   The "presence of a bad purpose or evil intent" by itself is insufficient to satisfy the willfulness element.   *Id.* at 103.

As such, courts have emphasized the importance of extrinsic evidence in criminal civil rights cases charging § 242, particularly because the government has a high burden of proving specific intent.   One court stated, after quoting the *Screws* standard:

> In cases involving police officers, the officer's prior similar misconduct may be highly relevant to meeting that high burden of proving specific intent.   The United States' burden is a hard one to meet; if it cannot use evidence of prior incidents to meet this burden, it may go from difficult to impossible.

*United States v. Rodella*, 101 F. Supp. 3d 1075, 1113–14 (D.N.M. 2015), *aff'd*, 804 F.3d 1317, 1334 (10th Cir. 2015) (ruling that admission of prior-acts evidence from three separate victims

pursuant to Rule 404(b) did not necessitate a new trial in a § 242 case charging willful deprivation of the right not to be subjected to unreasonable seizure by a law enforcement officer).

Similarly, in another § 242 case, the Fourth Circuit affirmed the district court's admission of two incidents under Rule 404(b), both of which involved the defendant's misuse of a police dog during encounters with civilians. *United States v. Mohr*, 318 F.3d 613, 618, 621 (4th Cir. 2003). As to the first incident, the court held that evidence of the defendant's release of her police dog on the victim "was probative of willfulness because it suggested that . . . [defendant] used her police dog in a way that recklessly disregarded the risk that her actions would violate a citizen's right to be free from the use of excessive force." *Id.* at 619. The court specifically framed its ruling "[i]n light of the government's heavy burden of proving, beyond a reasonable doubt," that the defendant released her dog with the "particular purpose" of violating the victim's right to be free from unreasonable force. *Id.* The court explicitly rejected the defendant's argument that this extrinsic evidence was not "necessary" because "the government had 'a mass of [other] evidence.'" *Id.* In fact, the court also affirmed the admission of a second extrinsic act, holding that the second incident was "necessary" and "not unfairly prejudicial." *Id.* at 621. *See also United States v. Krug*, 2017 WL 907817, at *4 (W.D.N.Y. Mar. 8, 2017) ("The other-acts evidence in this case is very probative of the question whether the Defendant acted 'willfully' when he allegedly used excessive force. It is, of course, difficult to prove intent without circumstantial evidence. And it is even more difficult to prove a unique type of specific intent, such as that required by § 242, without circumstantial evidence.") (citations omitted).

In addition to *Mohr* and *Rodella*, various Circuit courts have affirmed the admission of extrinsic evidence under Rule 404(b) in § 242 cases. *See United States v. Morris*, 494 F. App'x 574, 575 (6th Cir. 2012) (affirming admission of deputy sheriff's prior sexual encounters of two

women per Rule 413 and 404(b) in § 242 case involving sexual abuse of two women during routine traffic stops that led to the rape of one woman and the strip search of another); *United States v. Gonzalez*, 533 F.3d 1057, 1064 (9th Cir. 2008) (affirming admission of two uncharged encounters of a sexual nature by police officer under Rule 404(b) in § 242 case); *United States v. Simmons*, 470 F.3d 1115, 1125–26 (5th Cir. 2006) (affirming admission of Rule 404(b) evidence, defendant's failure to log marijuana seized during traffic stop, as "integral to the events leading to [victim]'s sexual assault" and corroborating her testimony in § 242 sexual assault case).

## II.    The Improper Consensual Sexual Relationship Is Admissible Pursuant to Fed. R. Evid. 404(b)

The defendant contests the admission of his consensual sexual relationship with C.M. on the grounds that it is not sufficiently relevant, and will confuse and unfairly prejudice the jury. Opposition (DE 40 at 7-9).   Evidence of the C.M. relationship is relevant and admissible pursuant to Rule 404(b) because it establishes the defendant's willfulness and *modus operandi*, and provides probative evidence that is not outweighed by unfair prejudice.[1]

### A.    The Defendant's Improper Relationship with Student Trainee C.M. Is Relevant to Intent and *Modus Operandi*

The evidence of the defendant's improper sexual relationship with police academy trainee C.M. is admissible under Rule 404(b) to prove the defendant's intent and *modus operandi*. Notably, this evidence is not criminal and it occurred after the charged conduct.   It is well-settled in this Circuit that the principles governing other acts evidence are the same whether the conduct occurs before or after the offense charged, and regardless of whether the activity might give rise to criminal liability.   *United States v. Dickerson*, 248 F.3d 1036, 1046 (11th Cir. 2001).

---

[1]  While the government believes that evidence of the defendant's sexual assaults of Victim 4 and Victim 5 also is admissible under Rule 404(b), the defendant did not contest its admissibility under Rule 413, and thus the government does not address it here.

The relationship with C.M. is probative of willfulness because it shows that the defendant was willing to disregard the rules and use his position of police authority and power to obtain sexual gratification from C.M., who was hoping to obtain a job as a police officer at HPD upon graduation.   The defendant was C.M.'s instructor at the police academy as well as a recruiter for HPD.   The defendant knew that the police academy did not permit instructors to have sexual relations with students, yet he initiated such a relationship with her in the very first week of classes. In that first week, he obtained her telephone number by offering to help her with the HPD application process and, days later, arranged an individual meeting with her in his car, ostensibly to discuss the application process.   Instead, they had sexual intercourse.   The defendant thereby willfully misused his police position and authority to secure sexual gratification from a young woman beholden to him.   That is the same intent the government must prove to establish the charged conduct involving Victim 1, Victim 2, and Victim 3, and as a result, this evidence is relevant and highly probative.   *See Mohr*, 318 F.3d at 619 (holding the other act evidence was probative of willfulness, particularly because the defendant disputed her intent at trial); *Rodella*, 804 F.3d at 1334 (holding defendant's involvement in other three incidents established defendant's motive and intent); *United States v. Hollingsworth*, 2010 WL 3385349, at *5-6 (E.D. Ky. Aug. 25, 2010) (admitting various extrinsic acts under Rule 404(b) as relevant to motive and intent). Notably, the defendant has put his intent at issue by pleading not guilty and his sexual relationship with C.M. is crucial evidence of his intent.   *See United States v. Hardy*, 520 F. App'x 835, 840 (11th Cir. 2013) ("examining the first prong of the Rule 404(b) analysis, [the defendant] rendered his intent a material issue by pleading not guilty.").

The prohibited sexual relationship he maintained with his student is probative of his intent, and the evolution of that relationship provides further support that he established his authority over

younger females in an effort to obtain sexual favors from them.   When their relationship came to light, the defendant, using his authority and superior position, pressured and coerced C.M. to lie to academy instructors investigating their relationship, and to resign from the academy.   He also told her that if she told somebody about their relationship or the pregnancy, he would make sure that she never became a police officer and that he would call his connections from every department and tell them not to hire her.   These statements show that the defendant was invoking his official position to influence her not to cooperate with the police academy's investigation, which is probative of his willingness to invoke his official authority for his private ends.   *See United States v. Dillon*, 532 F.3d 379, 390 (5th Cir. 2008) (affirming admission of two other uncharged sexual assaults under Rule 413 in § 242 sexual assault case and noting that defendant's statements that he was "a powerful person," who knew "people in all places," were invocations of his official position and probative of his willingness to invoke his authority for his private ends).

In sum, the government is tasked with proving the high burden of willfulness, and evidence of the defendant's sexual relationship with C.M. is probative of his intent.   This evidence is also relevant to show the defendant's *modus operandi*, as discussed in subsection C below.

**B.  Probative Value Is Not Substantially Outweighed by Undue Prejudice**

The probative value of the proffered evidence must not be *substantially outweighed* by unfair prejudice, which requires assessing all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness.   *United States v. Rojas*, 145 F. App'x 647, 649-50 (11th Cir. 2005).

The defendant argues that the relationship with C.M. is not similar to the charges that the he engaged in non-consensual sex while on police duty.   Opposition at 5.   The defendant overlooks the fact that he was employed in his capacity as a police officer at a police academy,

both as an instructor and a recruiter for HPD, and used his position of authority over trainee C.M. to obtain sexual gratification from her by promising to help her obtain employment at HPD in disregard of the academy rules against such relationships.   Subsequently, when the relationship was discovered, the defendant then pressured C.M. to falsely deny it and remain quiet by threatening to ruin her career if she did not.   The C.M. incident is sufficiently similar to the charged conduct for the purpose of permitting extrinsic evidence – it need not be identical in all aspects.   *See Dillon*, 532 F.3d at 389 ("Similarity is relevant because the more similar the uncharged activity is to the charged offense, the more probative it is.").[2]   However, the prior "sexual assault does not need to have been identical to [the charged victims'] to be admissible, but aspects of the assault must have sufficient probative value as to some element of the charged offense to not be substantially outweighed by its danger of unfair prejudice."   *Id.* (rejecting argument that the probative value of the prior incident was substantially outweighed by unfair prejudice because it was not sufficiently similar to the charged sexual assaults).

Moreover, the similarity of the charged and the extrinsic offenses is not the only question to consider.   There are circumstances where there may be little similarity between the charged offense and the extrinsic offense, yet the latter may be probative of an element of the former.   *See, e.g.*, *United States v. Williams*, 816 F.2d 1527, 1531 (11th Cir. 1987) (permitting evidence of defendant's commission of two prior rapes in a prosecution for assault with a dangerous weapon, a specific intent crime, because it was probative of his intent).   Here, however, the improper and coercive relationship the defendant engaged in with C.M. is similar to the charged offenses, occurred within two years of the incident with Victim 1, and, given the government's burden of

---

[2] The prior incident in *Dillon* was offered under Rule 413, which requires the same Rule 403 balancing test.   *Dillon*, 532 F.3d at 389.

proof on the intent element, provides important probative evidence.

Ultimately, the probative value of this evidence is not outweighed by the risk of unfair prejudice, especially in light of the more graphic descriptions of sexual acts the jury will have already heard from Victims 1-3.  *See Mohr*, 318 F.3d at 619.  Notably, in *Mohr*, the court held that the extrinsic act evidence was not unfairly prejudicial under Rule 403, even though the defense argued that it painted the defendant "as a 'racist' white police officer, releasing her 'attack dog' on a 'defenseless African–American child.'" *Id.*  The court acknowledged that such evidence would severely damage defendant's defense, but unfair prejudice "under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *Id.  See also Rodella*, 804 F.3d at 1334 ("We therefore reject [defendant]'s argument that the other-act evidence required the jury to make propensity-based inferences in order to find the element of willfulness."); *United States v. Guidry*, 456 F.3d 493, 504-05 (5th Cir. 2006) (affirming admission of uncharged sexual assaults committed by defendant police officer in § 242 sexual assault case pursuant to Rule 413 and Rule 403 balancing test); *Dillon*, 532 F.3d at 391 ("This evidence was undoubtably prejudicial to [defendant]'s case. 'Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.'") (emphasis in original).

## C.  The Cases Cited by Defendant Do Not Support Exclusion

The cases cited by the defendant do not support the exclusion of the C.M. evidence.  In *Silkwood v. Kerr-McGee Corp.*, an employee of a nuclear power plant died and her estate sued, alleging that the employee was injured as a result of the defendants' negligence in permitting plutonium to escape from their plant.  485 F. Supp. 566, 571 (W.D. Okla. 1979).  The defendants attempted to besmirch her character by seeking to admit evidence of her sexual relationships, drug

use, and suicide attempts.  *Id.* at 592-93.   This apparent attempt at character assassination was devoid of any connection to the issues presented in the case, and clearly impermissible pursuant to Rule 404(b).   *Id.* at 593.   By contrast, the Rule 404(b) evidence here is offered for legitimate purposes, including to prove intent and *modus operandi*, and is similar to the charged conduct.

The defendant also points to *Williams v. City of Kansas City*, 223 F.3d 749 (8th Cir. 2000), to argue that evidence of a prior consensual relationship should be excluded under Rule 404(b).   Opposition at 6.   In *Williams*, however, the plaintiff brought a hostile work environment claim and sought to introduce evidence that her supervisor had engaged in two consensual sexual relationships while on the job, one with a customer, and the other with a subordinate, nineteen years earlier.   *Id.* at 751, 755.   The *Williams* court excluded evidence of the first relationship because "[a] prior relationship with a customer is simply not probative of whether [the supervisor] would seek a relationship with a coworker," and the second because it was too remote in time to be relevant.   *Id.* at 755.

Here, C.M. was not similarly situated to a customer, who might be at least in an equal, if not superior position of power, to the defendant in *Williams*.   The defendant here began a sexual relationship with C.M. while she was the defendant's student trainee in a hierarchical police academy setting, and was openly seeking employment from the defendant's police department, for which he simultaneously functioned as a recruiter.   This created a stark power imbalance the defendant exploited for his own sexual gratification, similar in kind to the power imbalances between the defendant and Victims 1-3.   Moreover, unlike the nearly two-decades-old relationship the *Williams* court excluded, the defendant began his relationship with C.M. just two years after he sexually accosted Victim 1.   At that time, HPD removed the defendant from his position as a patrol sergeant and reassigned him to the police academy.   No longer in a position

11

to cruise his sector for young women, he turned instead to using his position of authority to exploit his trainee, consistent with his *modus operandi* of disregarding proper procedure and abusing his power to obtain sexual gratification from young women under his influence and control, providing further proof of willfulness.

*Ross v. Baldwin Cnty Bd. of Educ.*, an unpublished district court opinion, is, like *Williams*, a hostile work environment claim. 2008 WL 2020470 (S.D. Ala. May 9, 2008). In *Ross*, the court excluded evidence of a supervisor's consensual relationship with his secretary because it lacked sufficient probative value to any issue properly before the jury. *Id.* at *1. While the defendant's initially consensual but unequal relationship with C.M. may at first glance resemble the consensual relationship between the supervisor and his secretary in *Ross*, the two are distinct because the defendant's relationship with C.M. morphed from one involving an implicit power imbalance to one that became overtly coercive. Once others at the police academy learned of the relationship – placing the defendant at risk of professional repercussions – the defendant coerced C.M. into falsely retracting her acknowledgement of their relationship to the police academy administrators and then resigning from the academy. He did so by threatening to ensure she never worked as a police officer with any area police department, a threat she found credible due to his local law enforcement connections; by trying to buy her silence by offering her a job with his family business; and by promising to help her gain admission to another academy in the future. He also told her what to write in her resignation memorandum and then insisted on reviewing that memorandum before she submitted it to confirm she followed his directions. Unlike the relationship in *Ross*, the defendant's relationship with C.M. lost nearly every indicia of a consensual relationship by its final stages. Instead, he was exerting the power of his position to control C.M., just as he had used his position to abuse his previous victims, including by relying

on his position to pressure or frighten them into remaining silent.

The defendant's reliance on cases involving sexual harassment to argue that evidence of his relationship with C.M. should be excluded under Rule 403 is also misplaced.   Opposition at 6 (citing *Williams*, 223 F.3d at 755-56; *Ross*, 2008 WL 2020470 at *1; *Berry v. Oswalt*, 143 F.3d 1127 (8th Cir. 1998)).   In each of the cases the defendant cites, the conduct at issue was sexual harassment and the proffered Rule 404(b) evidence involved sexual acts, both consensual and unconsented.   In *Berry*, for example, an inmate sued a correctional officer for sexual harassment. The district court permitted an inmate witness to testify for the purpose of impeaching the defendant's testimony.   The inmate's testimony that the correctional officer had arranged an inmate-on-inmate rape was so unlike the acts alleged in the lawsuit, which included "verbal abuse, propositioning, [and] unnecessary and selective patdowns" that it was properly excluded under Rules 403 and 404(b).   143 F.3d at 1133.   Evidence of consensual sexual relationships in *Williams* and *Ross* were excluded based on similar reasoning.   *See Williams*, 223 F.3d at 755; *Ross*, 2008 WL 2020470, at * 1.   Unlike in *Berry*, *Williams*, and *Ross*, where the defendants were alleged of sexually harassing the plaintiffs, here the defendant is charged with actually sexually exploiting his victims – forcing one to remove her clothes below the waist while he touched his genitals; one to touch his genitals; and one to orally copulate.   By comparison to the charged conduct and Rule 413 evidence, evidence of his relationship with C.M. will not unfairly prejudice the defendant and is therefore admissible under Rule 403.

### III.   Video Recordings of Other Women at Substation 5 Are Relevant To Show Opportunity and Plan, *Modus Operandi*, and To Rebut Likely Defenses

The video recordings from the surveillance cameras at Substation 5, which depict the defendant bringing in nine other women after hours and on weekends, are relevant to show the defendant's plan and opportunity, *modus operandi*, and to rebut his likely defenses.

13

### A. **Plan, Opportunity, and *Modus Operandi***

There is remarkable similarity between the video recordings of Substation 5 and the charged conduct of Victim 1 and Victim 3, which makes the video recordings highly probative of the defendant's opportunity, plan, and method of violating the civil rights of Victims 1-3 to obtain sexual gratification. *First*, Substation 5 was the exact same location where the defendant committed the offenses charged in Count 1 of the Indictment (involving Victim 1) and Count 1 of the Superseding Information (involving Victim 3). *Second*, they span the same time period: the video recordings are from nine separate occasions from May 9, 2015, through June 13, 2015. Notably, the defendant's conduct with respect to Victim 1 occurred on June 13, 2015, and his conduct involving Victim 3 occurred on May 31, 2015. *Third*, Substation 5 was not regularly staffed or open to the public during the charged offenses (May 31, 2015 and June 13, 2015) or during the dates relating to the other women. *Fourth*, in the videos, the defendant is in uniform, armed with his firearm, and working his shift as the sergeant on duty in patrol, just like he was when he encountered Victims 1-3. *Fifth*, the captured footage of the defendant's conduct is identical to his interactions with Victims 1 and 3: the defendant escorted young females into Substation 5 and then into areas that are out of surveillance camera view, such as the roll call room where the sergeant's offices are located or the bathroom. *Sixth*, the young women all left Substation 5, shortly after entering with the defendant, on their own accord; none were arrested. *Lastly*, there is no corresponding incident report for any of the other incidents depicted in the videos, just as there are no police records of the defendant's interaction with Victim 1.

These similarities are therefore relevant to show the defendant's plan and opportunity to bring young women into a closed substation to commit the charged offenses relating to Victim 1 and Victim 3. The videos show that he has unfettered access, privacy, and security at Substation

5, while in uniform and armed, and can therefore exert his authority under color of law to unreasonably search and seize Victims 1 and 3.  *See United States v. Morris*, 494 F. App'x 574, 586 (6th Cir. 2012) (affirming evidence of defendant's encounter with another woman as similar act evidence under Rule 404(b):  "the relevance of the [prior] incident is that . . . it shows that [defendant] had formulated a plan to isolate women for the purpose of using his position as a law enforcement officer to cause them to engage in sexual conduct to which they would not otherwise have consented").

Furthermore, the videos also show that his *modus operandi* is to meet young women, while he is on duty, and to bring them into Substation 5, a secluded, private area where he can escort the women to rooms with no cameras to avoid detection, meet with them there, and then release them without arresting them – all of which is consistent with the charged conduct of Victim 1.  It is further his *modus operandi* to not follow HPD protocol in documenting any of these encounters, which is consistent with his decision not to document Victim 1's incident at all.  The distinct similarities of the video recordings to the charged conduct in this case weigh strongly in favor of admissibility.  *See United States v. Gonzalez*, 533 F.3d 1057, 1064 (9th Cir. 2008).  In *Gonzalez*, the defendant was on trial for assaulting three women in violation of § 242 and the prosecution introduced testimony under Rule 404(b) from two other women establishing *modus operandi*.  *Id.* at 1063.  In affirming, the Ninth Circuit held that *modus operandi* entailed "being a police officer armed with a badge and a gun" who consistently approached his victims in the same manner, would establish a conversation with the victims about their families or personal relationships, would command the victims to "sit, squat, stand, or undress," and would then release them without arrest or citation.  *Id.* at 1063-64 ("Beyond propensity, the evidence established a way of behavior that could be reasonably relied upon by a juror to convict [defendant] of the charged offenses.").

In his opposition, the defendant cites to *United States v. Lail*, 846 F.2d 1299, 1301 (11th Cir. 1988), as a case that was reversed for improperly admitting extrinsic evidence.   Opposition at 7.   In *Lail*, there were few similarities between the charged and prior bank robberies.   In both cases, the robber acted alone, without a disguise, and with a gun – which the court noted was common to many bank robberies.   *Id.*   The court noted the "major dissimilarities between the 404(b) robbery and the charged robberies."   *Id.*   In the 404(b) robbery, the robber used dynamite as his main weapon but in the charged crimes, the robber used a handgun as the main weapon; in the 404(b) robbery, the robber posed as a businessman and made two trips to the bank, but in the charged crimes, the robber did not pose as a businessman, made no pretense as to his motive, and made only one trip to the bank; and in the 404(b) robbery, the robber forced the bank manager to leave the bank with him, but in the charged crimes, the robber took no hostages.   *Id.*   By contrast, the video recordings here are strikingly similar to the charged conduct, as noted above.

### B.  Rebuttal of Likely Defenses

Moreover, these video recordings are relevant to rebut two likely defenses:   1) that the lack of documentation relating to Victim 1's incident was mere forgetfulness or sloppy police work; and 2) that the victims consented to the sexual acts or that they never occurred.

As for the first defense, the defendant will likely claim that he encountered Victim 1 as part of his official duties and legitimate police work, and for some reason failed to document this one incident.   However, the video recordings of nine other instances where he escorted women into Substation 5 but consistently failed to document these specific encounters – yet documented other police activities on those days – show that he was intentionally not documenting these instances because they were not pursuant to his official duties and legitimate police work.   The consistent lack of documentation shows that he did not want his encounters to be discovered precisely

16

because he knew that escorting women into the Substation alone without documenting it was against HPD policy – which is proof of willfulness, an essential element of § 242.   Without the nine other occasions where the defendant failed to document his encounters with females he escorted into Substation 5, the government cannot effectively rebut this likely defense and show this compelling evidence of willfulness.

With respect to the second defense, the evidence shows that the defendant escorts women into the station alone, when the station was closed, and with no corresponding documentation, which violates HPD training and polices designed to protect women from assault and HPD from complaints of assault, founded or unfounded.   This evidence is relevant to counter a defense that (1) the women consented to the sexual conduct and/or (2) the sexual acts never occurred because the videos and corresponding lack of documentation demonstrate that the defendant routinely flouted rules designed to protect women and the department, which is probative of willfulness.

The probative value of the video recordings is not *substantially outweighed* by unfair prejudice.   There is nothing inflammatory or salacious on the videos, as they just show the defendant bringing women into Substation 5 and taking them out of view.   Any prejudice arising from the introduction of the videos will be slight, particularly in light of the graphic and sensitive nature of the testimony that the victims in this case will provide.   The jury will have already heard about the incidents involving Victims 1, 2, and 3 – conduct which involves asking Victim 1, a minor in his custody, to remove her shorts and underwear; exposing his bare penis to Victim 2, placing her hand on it, and kissing her; and inducing Victim 3 to perform oral sex on him.

The government will <u>not</u> argue that the defendant sexually assaulted any of those other women depicted in the videos, unless new evidence emerges.   *See* DE 37 at 30 n.18.   Because the defendant did not document those encounters, law enforcement was unable to identify them

despite their investigative efforts, and so the defendant's actions with them are not known.   The video recordings will only be relevant to show the defendant's plan, opportunity, and method of violating the civil rights of Victims 1-3 to obtain his own sexual gratification.   Lastly, any prejudicial effect of such evidence can be minimized by a limiting instruction from the district court.   *See United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003) ("unfair prejudice that may have existed was mitigated by the district judge's limiting instruction").

Another Rule 403 consideration is prosecutorial need.   The government needs the Rule 404(b) evidence because none of the actual sexual abuse committed by the defendant on the victims was witnessed by a third party or captured on Substation 5's surveillance cameras.   The surveillance cameras captured the lead-up to his abuse of Victim 1 and Victim 3, when he initially escorted them into the building, but he brought his victims out of camera view to commit the actual abuse.   In addition, each of these three victims certainly will be subject to heavy cross-examination and attacks on their credibility.   The Rule 404(b) evidence will provide significant evidence relating to key aspects of their accounts by showing the defendant using the same method of abusing his police position and engaging in similar conduct with other young women during the same timeframe.   As such, the probative value of this evidence is high.

**IV.   <u>An Evidentiary Hearing Is Neither Necessary nor Required</u>**

In his Opposition, the defendant requests that the Court hold an evidentiary hearing prior to admitting any evidence under Rules 404(b) and 413 because the rules "require[] proof that an act occurred by a preponderance of the evidence."   (DE: 40 at 9).   The Supreme Court has previously ruled on this question, holding that a district court is not required to make a preliminary finding that the government's evidence meets the preponderance of the evidence standard before it submits that evidence to the jury.   *Huddleston v. United States*, 485 U.S. 681, 682 (1988).   In

18

*Huddleston*, the petitioner argued that the jury "ought not to be exposed to similar act evidence until the trial court has heard the evidence and made a determination" regarding admissibility. *Id.* at 686-87.   The Court rejected this argument as "inconsistent with the structure of the Rules of Evidence and with the plain language of Rule 404(b)." *Id.* at 687.   The Court also found that such a requirement was likewise "inconsistent with the legislative history behind Rule 404(b)." *Id.* at 688.   Instead, a court should admit any evidence introduced for a proper purpose, "subject only to general strictures limiting admissibility such as Rules 402 and 403." *Id.* at 687-88.   No "preliminary finding by the court is called for under Rule 104(a)." *Id.* at 689.

Neither of the cases the defendant relies on support the conclusion that an evidentiary hearing is either necessary or helpful.   In *United States v. Dillon*, the Fifth Circuit affirmed the admission of the testimony of two of the government's four proffered Rule 413 witnesses.   532 F.3d 379, 388 (5th Cir. 2008).   The *Dillon* court did not hold that an evidentiary hearing was required prior to the admission of Rule 413 or 404(b) evidence, nor did it conduct such a hearing. Instead, it relied on "representations made by the United States in its submissions" and testimonial evidence presented by the United States at the defendant's detention hearing[3]  to conclude that the testimony was relevant and admissible.   *United States v. Dillon*, No. 2:05-cr-00314-LMA-SS, Order and Reasons, DE: 74 at 4 (E.D. La. Apr. 10, 2006).   An evidentiary proffer, such as the detailed description the government provided in its Notice in this case, is all that is required because the court's role is to determine relevance, not credibility.   *Huddleston*, 485 U.S. at 690 ("the trial court neither weighs credibility nor makes a finding that the Government has proved the [relevance] by a preponderance of the evidence."); *Dillon*, 532 F.3d at 391 & n.9 (noting that Rule

---

[3] There is no indication in the filings that the proposed Rule 413 witnesses themselves testified at the detention hearing.

19

104(b) does not require corroboration for the admission of Rule 413 evidence, but only requires that "a reasonable jury could find by a preponderance of the evidence that the asserted sexual assault" occurred).

Likewise, the out-of-circuit, unpublished opinion in *United States v. Boyajian* does not hold that an evidentiary hearing is required to determine the admissibility of Rule 404(b). 2012 WL 4094977 (C.D. Cal. 2012). In *Boyajian*, the defendant argued that evidence of the defendant's prior state convictions for sexual contact with two sixteen-year-old victims was inadmissible under Rule 413 because it was consensual in nature. *Id.* at *1. The court ruled that, while a hearing was needed on the limited question of whether the defendant's prior conviction qualified under Rule 413, the same evidence was relevant and admissible under Rule 404(b) without resort to an evidentiary hearing because it was "highly probative of the defendant's modus operandi and intent." *Id.* at **7 & 9; *see also United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000) ("The prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur.") (citing *Huddleston*). As in *Boyajian*, the proffered Rule 413 and 404(b) evidence is relevant and admissible here without any need for an evidentiary hearing, and no hearing is required under the Federal Rules of Evidence or the caselaw.

## CONCLUSION

The United States requests that the government be permitted to present the evidence described in its Notice, pursuant to Rules 413 and 404(b), as it is relevant and admissible. Further, this Court should deny the defendant's request for an evidentiary hearing, as a hearing is neither necessary nor helpful to determining the admissibility and relevance of the proffered evidence.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*s/ Edward N. Stamm*
EDWARD N. STAMM
FL Bar No. 373826
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9164
edward.stamm@usdoj.gov


*s/ Ilham Hosseini*
ILHAM HOSSEINI
Court ID No. A5501904
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9297
ilham.hosseini@usdoj.gov

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

*s/ Samantha Trepel*
SAMANTHA TREPEL
Court ID No. A5501689
Special Litigation Counsel
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC   20530
Tel: (202) 305-3204
samantha.trepel@usdoj.gov