```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                     Case No. 19-20822-CR-KMW
 3
   UNITED STATES OF AMERICA,      )
 4                                )
         GOVERNMENT,              )
 5                                )
         -v-                      )
 6                                )
   JESUS MANUEL MENOCAL, JR.,     )
 7                                )
         DEFENDANT.               )   Miami, Florida
 8                                )   August 21, 2020
   _____)
 9

10      TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE PROCEEDINGS

11          BEFORE THE HONORABLE KATHLEEN M. WILLIAMS

12                 UNITED STATES DISTRICT JUDGE

13

14   Appearances:

15   (On Page 2.)

16

17   Reporter                   Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768              Official Court Reporter
18                              701 Clematis Street
                                West Palm Beach, Florida 33401
19                              E-mail:  SFranklinUSDC@aol.com

20

21

22

23

24

25
```

```
 1    Appearances:

 2    FOR THE GOVERNMENT       Edward N. Stamm, ESQ.
                               United States Attorney's Office
 3                             99 Northeast 4th Street
                               Miami, FL 33132
 4    -and-

                               Ilham A. Hosseini, ESQ.
 5                             United States Attorney's Office
                               Miami, FL 33131
 6    -and-

                               Samantha K. Trepel, ESQ.
 7                             United States Department of Justice
                               Civil Rights Division
 8                             950 Pennsylvania Avenue Northwest
                               Washington, DC 20530
 9
      FOR THE DEFENDANT        Michael C. Grieco, ESQ.
10                             Michael C. Grieco, P.A.
                               Southwest 8th Street, Suite 2100
11                             Miami, FL 33130

12                                 *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Call to the order of the Court.)

 2              THE COURT:  The Court calls case number 19-20822,

 3   United States versus Jesus Manuel Menocal, Jr.  Counsel please

 4   announce your appearances for the record starting with the

 5   United States.

 6              MR. STAMM:  Yes, good morning, Your Honor.  Edward

 7   Stamm, Assistant U.S. Attorney for the United States.

 8              THE COURT:  Good morning, Mr. Stamm.

 9              MR. HOSSEINI:  Good morning.  Ilham Hosseini

10   appearing on behalf of the United States.

11              THE COURT:  Good morning, Ms. Hosseini.

12              MS. TREPEL:  Good morning, Your Honor.  This is

13   Samantha Trepel also appearing on behalf of the United States.

14              THE COURT:  Ms. Trepel, good morning.

15              MR. GRIECO:  Good morning, Judge.  This is Michael

16   Grieco -- good speaking to you again -- representing

17   Mr. Menocal, and Mr. Menocal is present.

18              THE COURT:  Mr. Grieco and Mr. Menocal, good

19   morning.

20              THE DEFENDANT:  Good morning, ma'am.

21              THE COURT:  All right.  Is there anyone else on

22   behalf of any of the parties that wishes to make an

23   appearance?

24              Okay.  Let me just go over some ground rules.  As

25   you heard our intrepid court reporter say, if you would,
```

1    please, when you are speaking, identify yourself so he knows

2    who you are for the record, and please, if you all would speak

3    slowly and annunciate.  If there are any press or members of

4    the public on this call, of course everyone is welcome, as

5    they would be were we conducting this in open court, but as

6    with court, there are rules which include no verbal

7    participation from those who are listening in today.  Also,

8    you may not record or live stream this proceeding.

9         All right.  Before we start, I must give my profound

10   apologies to the parties for the last virtual debacle.  It was

11   a miscommunication and a mixup.

12        Mr. Santaruso, who is so diligent and sets

13   everything down, did not understand that I had put a hearing

14   down to discuss the jury questionnaire, not the 403 -- 404(b),

15   I'm sorry, 404(b) matter which is not yet fully briefed.  And

16   so you all were on the line waiting for a hearing that didn't

17   happen, and I really am so very, very sorry to have

18   inconvenienced you all in that way.

19        So now we get to why I wanted to get you all

20   together originally, and that's to discuss the jury

21   questionnaire.  And before we do that, circumstances have

22   altered, and I suppose we should discuss that, as well.  I'm

23   sure you're all aware that the chief judge has issued his

24   sixth, I believe, administrative order on behalf of the Court,

25   which sets off jury trials until the beginning of 2021, owing

1   to the COVID-19 pandemic and the Court's concern about

2   summoning jurors and sponsoring congregate settings.

3        So there is a provision, and has been in all of

4   these orders, which allows for parties, a party, to ask the

5   district to conduct a trial before that time, and I know we

6   are scheduled currently for November 8th.  So let me start by

7   asking all assembled if there's any issue they have with

8   rescheduling this trial 'til sometime in the new year.

9        The United States.

10       MR. STAMM:  Yes, Your Honor, Edward Stamm for the

11  United States speaking for all of us.  No, Your Honor, we have

12  no problem with you picking a new trial date in compliance

13  with the AO 2020-53 that Chief Judge Moore issued, which would

14  be in 2021.

15       THE COURT:  Correct.

16       Mr. Grieco, what is your and your client's position

17  on this?

18       MR. GRIECO:  Yes, Judge.  My client's position, as

19  well as mine, is consistent with the government's.  Mr. Stamm

20  and I have been in communication, and we have no objection,

21  and we concur with the setting the trial consistent with the

22  administrative order that was issued.

23       THE COURT:  Okay.  And with that, have you talked

24  about a time when you think it would best suit your schedules?

25  I don't think anybody wants to be number one on January -- I

```
1    don't know what it would be -- 3rd.  Have you talked about

2    when -- and I would imagine February-March, but I leave it to

3    you all to tell me what your thoughts are.

4             MR. GRIECO:  Judge, this is Michael Grieco.  I'll

5    speak to it first.

6             Under normal circumstances, I would say

7    February-March.  The only dilemma that I have, and as Your

8    Honor knows, I again make it a part of the record that I am a

9    member of the state legislature, and I'm trying to get the

10   committee week schedules for January-February in advance, but

11   historically in an odd-numbered year, there are seven -- I'm

12   sorry, there are five committee weeks in January and February,

13   and then legislative sessions will be all of March and all of

14   April, concluding the first week in May.  That's historically.

15            I was retained unopposed, so I am not on the

16   campaign that's distracting me from my duties to Mr. Menocal,

17   but there would be just a scheduling issue on that, and

18   Mr. Stamm and I have spoken on that issue.

19            THE COURT:  Okay.

20            MR. GRIECO:  And --

21            THE COURT:  So if I'm hearing the French subtitles

22   of this, you've talked to the government, and it's -- it would

23   be best for all concerned if this did not go in the early part

24   of 2021, but perhaps spring-summer of 2021?

25            MR. STAMM:  Your Honor, Edward Stamm for the
```

1    government.  Yes, Mr. Grieco and I had chatted, and the

2    uncertainties of what January and February would bring both in

3    his schedule, and honestly as the Court even noted, week one

4    coming out of the box could be -- could be anything, and the

5    possible slower movement of trial just because of the nature

6    of safety precautions and everything.  The reality is the

7    trial is best put forward to once Mr. Grieco's legislative

8    duties on-site and session duties are over, and we could

9    probably take a day that, then, would again stand, what we

10   would ask if possible that it be a specially set date in a

11   period agreeable after the legislative session, whether maybe

12   that be in mid to later May, to give Mr. Grieco a chance to

13   finish with the legislative duties, refocus on the case and

14   kind of have a date that works for everybody, most importantly

15   obviously the Court.  I think all counsel for the government's

16   schedule is clear, and, you know, we will be available

17   whenever during that timeframe.

18           THE COURT:  Okay.  Mr. Grieco, do you know when it's

19   likely you'll get the -- well, if we put it off you won't need

20   the committee schedules, I guess.  So do you think you and

21   Mr. Stamm could talk about this and by next week give me at

22   least two dates that you'd like to start trial, and then I can

23   set it and specially set it?

24           MR. GRIECO:  Yes, Your Honor.  I should have, for

25   purposes of the conclusion of legislative session, which is

1   usually the first week in May, I will have those dates firm,

2   and Mr. Stamm and I will have those two dates for Your Honor

3   next week.

4          THE COURT:  Okay.  All right, then.  Let's go ahead

5   and say officially what we knew before we started, that this

6   is not going November 8th, and I will continue this until a

7   date that's chosen by the parties and specially set that for a

8   date.  Even though the administrative order discussed the

9   speedy trial issue, Mr. Grieco, I take it you've consulted

10  with your client since you had these conversations with

11  Mr. Stamm about his speedy trial rights nonetheless and can

12  make a representation about that to me.

13         MR. GRIECO:  Yes, Your Honor, we've had those

14  conversations.  He's aware, and we would be continuing our

15  speedy trial waiver, as we have in the past.

16         THE COURT:  Okay.  All right, then.  So we don't

17  have as much urgency as to the jury questionnaire, but I think

18  it -- since we've set aside the time, I'd at least like to

19  talk about it preliminarily.

20         First, I sent a cover page, a draft to you all last

21  night, which expanded a little on the one that you sent to the

22  Court, and frankly I did so with the idea that at least juries

23  summoned in January might have a lot of their voir dire

24  conducted online with jury questionnaires.  I don't think

25  we're going to be sending them by mail.  I think there was a

1    design on our website to send things online.  And so I wanted

2    to give the jurors as much explanation about voir dire or jury

3    questionnaire as I could, even though I know I will be

4    repeating it.

5         So I wondered -- I know you just received it last

6    evening, but I wondered if any of the parties had any comments

7    about that cover, knowing why it is I sent it.

8         MR. STAMM:  Your Honor, Edward Stamm for the United

9    States.

10        We looked at it and discussed it, and we were fine

11   with it.  It did elaborate a little more and probably maybe --

12   you know, was probably very good to anticipate jurors, give

13   them a little more information about why they're getting such

14   a lengthy and they might see intrusive questionnaire.

15        I think we had noted just one might have been a

16   missing "A" regarding one of the lines.

17        THE COURT:  Probably.

18        MR. STAMM:  There's really nothing else of --

19   nothing else of note.  It just elaborated, and the government

20   was fine with it, Your Honor, in its expanding fashion, given

21   more information.

22        THE COURT:  All right.  Mr. Grieco, what about you?

23   I didn't even know if you had time to look it over.

24        MR. GRIECO:  I did, Judge.  Thank you.  Again,

25   Michael Grieco for Mr. Menocal.  We're agreeable to it with

 1   the same kind of comments that Mr. Stamm has.

 2          THE COURT:  Okay.  And Mr. Stamm, if there is a

 3   typo, just send your comment to the chambers e-mail box, and

 4   we'll --

 5          MR. STAMM:  Okay.

 6          THE COURT:  -- fix that.

 7          I don't think we need to discuss it now in light of

 8   the fact that we have set this trial so far out, but you

 9   should be aware that the Court has designed questions which we

10   may be employing with jurors should there still be serious

11   concerns about COVID exposure, and I will, of course, provide

12   them to you should that be the case.  Hopefully that will be

13   just a distant memory in the rearview mirror, but should that

14   be the case, the Court has actively been working to have

15   questionnaires, one, that can be answered online with minimal

16   paper contact and exchange; and, two, that would address the

17   immediate concerns jurors might have about COVID.  But I just,

18   I don't think we need go over that now, and hopefully we need

19   never go over that.

20          I do think, though, that even by May or June of 2021

21   there will still be enough concern, and probably people will

22   have become more accustomed to communicating online, the

23   questionnaire likes this would be appropriate.

24          So if we could, let's turn to what the objections

25   are.  And I do want to commend the parties for working

1   together on this and putting together a comprehensive

2   questionnaire with really a minimal amount of objections.

3          So according to the parties, the objections are to

4   questions 35 through 38 and 40 through 43, and those are the

5   defense objections.  So I wondered what -- Mr. Grieco, I think

6   I know what your objections are, and you can articulate them,

7   but I wondered if your objection was to the fact that it

8   was -- these questions are done with particularity as to

9   illegal activity, criminal history and the particular question

10  about prostitution, and you think it could be done in one

11  question, or you don't think that should be gotten into at

12  all?

13         MR. GRIECO:  Judge, again, Michael Grieco on behalf

14  of Mr. Menocal.

15         Kind of yes and no.  In my communications back and

16  forth with counsels for the government, one of the objections

17  were just regarding the overall pre-trying of the case and

18  trying to use the jury selection process to minimize the fact

19  that just about all of their witnesses and alleged victims are

20  criminals and/or prostitutes and/or were actively

21  participating in such a trade at the time that these alleged

22  offenses occurred, but also that they were all kind of

23  collectively duplicative of each other.

24         And then lastly, you know, these questions being

25  asked in a vacuum in writing in a questionnaire, to me it's

```
 1   kind of unique.  I mean, I've probably -- I think I've
 2   counted.  I think I've tried over 90 jury trials, and, you
 3   know, when these types of questions are allowed -- and I'm not
 4   conceding to whether or not they should be, but when they are
 5   allowed, this seems like a more appropriate line of inquiry
 6   that should be happening live, to where the Court and/or the
 7   defense can actively participate in any sort of potential
 8   elaboration or rehabilitation, if need be, as opposed to
 9   asking them so directly in a questionnaire without any sort of
10   context.  I think that these are very specific, very
11   duplicative questions that, if they were to be allowed, I
12   think that these are questions that are more appropriate for
13   the live voir dire process as opposed to in a questionnaire
14   process, which is supposed to really not -- not go too much
15   down the rabbit hole without being able to provide that
16   context.
17            THE COURT:  Well, let me say this.  As to the
18   questions 36, 38, 41, 43 and I guess 46, even though that
19   wasn't listed, I generally do not allow questions that pose
20   the hypothetical, "even if the government proved its case,
21   would you hesitate to find."  I just think that that's not an
22   appropriate discussion at voir dire.  I do think hesitation or
23   issue about witnesses because of certain backgrounds is
24   appropriate, though.
25            So I think you, you know, do you think or you would
```

 1   believe or disregard a witness' testimony sim -- you know,

 2   because they had engaged in a prior criminal act, if so,

 3   please explain, that I find appropriate.  And maybe you all

 4   could talk about kind of consolidating that instead of, you

 5   know, prostitution, but I don't know.

 6            Mr. Stamm, you may have thoughts about why you

 7   think --

 8            MR. STAMM:  Yes.

 9            THE COURT:  -- it needs to be particular.

10            MR. STAMM:  Yes.  And, Your Honor, this is Edward

11   Stamm for the United States.

12            There was a method to the -- to those kind of almost

13   three-part nature or three-question nature of these different

14   subjects particularly relevant to this case.

15            And first, as a starter, obviously when the

16   questionnaire was prepared in its original form, it looked

17   like we were still under the November 9 trial date, and I

18   recall from the last hearing we had had, the Court had talked

19   about how, if we could hold that date, we'd obviously have a

20   very different jury selection process, you know.

21            THE COURT:  Right.

22            MR. STAMM:  A lot more would be done by

23   questionnaire, and so we tried to be as complete as possible.

24            But there was~-- the reason for these extra

25   questions, there was a methodology.  For the first in the

1   order, which would be 35, 37, 40 and 42, which are ones you

2   indicated the types of questions you were okay with, those

3   were simply questions designed for these very different and

4   specific areas, and we didn't feel we could combine them all

5   into one, is, are you going to simply not even listen to the

6   witness.

7          And, in fact, there's jury instructions often talk

8   about it's your duty to listen, you know, you can look

9   carefully, but they're never allowed simply to say, oh, this

10  person was a prostitute, or this person has a lifestyle we

11  didn't -- I don't approve with, so I'm tuning them out right

12  now.  They have to -- if they're not even willing to give it a

13  fair shake and listen and then make their own assessment, then

14  they're not a fair juror, just as if they were to say, well,

15  if the guy's charged, he must be guilty.  It's that same

16  closed mind.

17         The second question, and one that the Court

18  indicated you normally don't allow --

19         THE COURT:  Uh-huh.

20         MR. STAMM:  -- was because of the nature of this

21  case, we felt those questions were important, both because the

22  nature of the defendant and then being in a position that he

23  is, but also for the fact that, yes, there may be some

24  potential jurors, and that's fine, who don't approve of some

25  of these lifestyles, who have issues with people that may have

1    been involved in prostitution or have criminal records, things

2    of that nature.  But we don't believe a fair juror would be

3    someone who come in and say, yeah, the government proved its

4    case, but I so dislike these witnesses, I so dislike someone

5    who was involved in prostitution or someone who may be

6    involved in a same-sex relationship that I don't care, you

7    know.  Yeah, I believed it, but I'm not -- I'm going to just

8    nullify.

9          And we think that the government, as well as the

10   defense, is entitled to a fair trial, and that's what those

11   questions were geared at, and so that's why they were broken

12   out differently.  It was the general, do these people even

13   deserve the protection of the law, because it's a civil rights

14   case; and then when hear from them, is your mind at least

15   going to be open.  They can make their own decision

16   afterwards.  Obviously they may disbelieve, but if they

17   haven't listened, that's not fair, and I know the Court

18   indicated that question was okay in each of the subjects.  But

19   then if they're simply going to say, I don't care, I'm voting

20   not guilty, that's not -- they're not supposed to be coming in

21   with that mindset.  And so that was the theory behind it.

22         They were also -- in a normal voir dire, we would

23   obviously, you know, want to explore some of these in more

24   detail in the oral voir dire, but we wanted to state out

25   everything potential because of the nature of the voir dire

1    that was expected.

2            So that was kind of the thought process.  And I will

3    say, you know, and as the Court did note, we got along very

4    well on this.  We were able to I think agree on like 70 of the

5    questions.

6            THE COURT:  Right.

7            MR. STAMM:  Which I thought was pretty good from

8    both parties.

9            THE COURT:  No, I think it was -- I think it was --

10   speaks well of the -- both parties that they were able to do

11   so, and especially do so without the benefit of a face-to-face

12   meeting, which usually is how these things are worked through.

13           So, well, I'll -- since we have time, I'll take

14   another look, but I will sustain the objections to 36, 38, 41

15   and 43.  I will look at the others that Mr. Grieco had

16   objected to.  And I will say even if I give them all, I'm

17   going to eliminate some modifiers.  So, do you think you might

18   believe or disregard such a victim's testimony just because,

19   "just" is coming ought, or simply because, "simply" would come

20   out.  I don't want there to be any characterization that might

21   not -- that might put a thumb on a scale of some sort.  If

22   we're just -- if we're asking them what their perspective

23   would be because of these factors, then let's just go ahead

24   and ask.

25           And there were some other questions that I was -- I

```
1    just wondered about, and that was question 30, do you think
2    the federal government should not be involved -- and, again, I
3    don't know why we need to bold and all cap "not" -- but should
4    not be involved this prosecuting police officers, and that it
5    should be left to the State to prosecute or to police
6    departments to impose discipline.  I don't know if it was just
7    the all cap, all bold that I -- caught my eye, or I tended to
8    think the question mark should just come after "civil rights",
9    because I don't know that it's an either/or even if one
10   sovereign does make the decision, I kind of worry about
11   misleading the jury about the viability of certain things.
12   But, anyway, maybe, Mr. Stamm, what -- do you think -- well,
13   I --
14            MR. STAMM:  Your Honor --
15            THE COURT:  I'm going to take away your bold and
16   your caps.
17            MR. STAMM:  Right.
18            THE COURT:  But other than that, do you have any
19   other thought about that question?
20            MR. STAMM:  Yes.  And this is Edward Stamm again.
21            And I'll -- I don't know, yeah, now that I look at,
22   obviously the bold, maybe it was just so they could
23   understand, you know, what the question was.  But obviously
24   it's the very few bold caps, and maybe that goes out.  That's
25   not our issue.
```

```
 1                I guess our biggest concern, and if the Court wanted
 2    to get rid of the second part of the clause --
 3                THE COURT:  Uh-huh.
 4                MR. STAMM:  -- that's fine.  I guess our concern was
 5    that there may be people who say, hey, this is a local police
 6    department, it's a local matter, why is the federal government
 7    tromping around kind of sticking its nose where it doesn't
 8    need to be, and obviously the federal government has a
 9    different mission in civil rights cases than maybe state
10    authorities do.  And so we could live with the question mark
11    following, "who violates individuals' civil rights," and
12    obviously putting it all into the normal lowercase.  We would
13    be fine with that, Your Honor.
14                THE COURT:  Right.  Because I --
15                MR. STAMM:  I'm just concerned that some people
16    wouldn't want us -- don't think the federal government should
17    be involved at all.
18                THE COURT:  Right.  But my thinking was that they --
19    if that was their thought, then they would, in the, "if 'yes',
20    please explain," say, well, they've got --
21                MR. STAMM:  I mean, we're fine with the last clause
22    out.
23                THE COURT:  Okay.  Mr. Grieco, am I -- do you wish
24    it to remain the way it was for a reason, or what --
25                MR. GRIECO:  No, Judge.  Again, Michael Grieco on
```

```
 1   behalf of Mr. Menocal.

 2          Judge, I see where you're going with it.  Maybe it

 3   needs a little tweaking.  I wasn't jumping up and down about

 4   the underlying motivation for the question.  But, yeah, I

 5   mean, after reviewing 80 questions and some things will slip

 6   by, maybe there's a better way to articulate it, but we're not

 7   objecting to the substance of the question.

 8          THE COURT:  Okay.  I just -- I'm, again, not trying

 9   to interfere with the parties' agreement, because I applaud

10   that and encourage that.  I just don't want to set up a

11   paradigm where I'm misleading the jury about the law, i.e.,

12   you know, the federal government is tasked with and may do

13   this, and they might have an issue with it, but to posit the

14   idea that it was an either/or I think might generate

15   confusion, and I was concerned about that.

16          MR. STAMM:  Yes, Judge.

17          THE COURT:  All right.  Those were the -- I'm sorry,

18   Mr. Stamm.

19          MR. STAMM:  Oh, no.  I was just going to say, as I

20   say, I'll just restate we're fine if the tweak of the change

21   the Court wants is the elimination of the last clause, because

22   whether the state or local police department does anything

23   really isn't relevant to their service as a juror in any

24   event.

25          THE COURT:  Right.
```

1          Okay.  All right.  Those were the only comments I

2    had, and so I -- if the parties hadn't sent this to me in

3    Word, if you could do so, and I could make the edits and then

4    send them back to you, because we do have time for final

5    reflection and remarks, but since we were already convened, I

6    thought we should go ahead.

7          I know that the government filed its memorandum with

8    regard to 404(b), and I'm not going to take that up, because

9    Mr. Grieco, you have an opportunity to file your response.  So

10   I don't want to engage in a premature discussion on that in

11   that regard.

12         MR. GRIECO:  Judge, if I may, Michael Grieco on

13   behalf of Mr. Menocal.

14         I did want to inquire of the Court as to when --

15   when the deadline would be to respond to the filing.  The

16   filing was made on August 10th.  I did agree to an extension

17   of time for the government to file that, but I wanted to know

18   from the Court how soon you would need a response to the

19   notice.

20         THE COURT:  Well, again, we have the benefit of time

21   now, but I would like to -- and I'm doing this with all my

22   cases.  I would like to get us in as complete a posture as

23   possible so that we can go to court.  And knowing your

24   responsibilities, Mr. Grieco, post-January, it would be nice

25   if we could have argument and address these issues well before

```
 1    that.
 2              So with that in mind, do you need another two weeks?
 3    Do you need another three weeks?  What would you need?
 4              MR. GRIECO:  Judge, yeah, if we can give it a
 5    deadline of mid-September that would be ideal.  I don't want
 6    to say that the -- the notice is not voluminous, but my
 7    response may need to be, because there are so many issues
 8    involved.  So if we could set a deadline of, call it
 9    September 18th?
10              THE COURT:  Okay.
11              MR. GRIECO:  That would give me adequate time to
12    provide the Court with a comprehensive response.
13              THE COURT:  Mr. Stamm, do you have any objection to
14    that?
15              MR. STAMM:  No, Your Honor.  Edward Stamm for the
16    United States.
17              Mr. Grieco was courteous enough to agree to the
18    extension.  We had indicated we wouldn't oppose an extension,
19    as well.  And I will note it was, I believe, 31 pages, what we
20    filed.  So with our new schedule, September 18th for his
21    response is fine with us, Your Honor.
22              THE COURT:  Okay.  And it might do us well to talk
23    about other deadlines that I don't know that we've really
24    talked about before, but Mr. Grieco, do you see any
25    dispositive motions, dismissal or supression or anything?  And
```

1    if you do, when might you think they would be filed?

2          MR. GRIECO:  Judge, the answer is "no".  We initial

3    he a deadline of the 24th on this -- the trial order that we

4    are operating under currently.  I don't foresee -- there's no

5    items that would be subject to supression in my opinion.  And

6    moreover, I do not think that there's any motion to dismiss

7    that's been triggered at any point.

8          So, no, I don't foresee any such motion being filed.

9          THE COURT:  All right.  So there would be the

10   discussion on 404(b), and so we can leave it 'til September,

11   probably October to have another conference where we could

12   examine those issues and then perhaps (inaudible) out others

13   and talk about what would need to be done to be ready for the

14   trial date that you will both propose to me, coming on the

15   heels of Mr. Grieco's responsibilities in the legislature.

16         All right.  Is there anything else either side

17   wishes the Court to address or take up at this time?

18         MR. STAMM:  Yes, Your Honor.  Edward Stamm for the

19   United States.

20         The one other deadline that was floating around was

21   in your trial order, you had set a deadline for pretrial

22   motions, including motions in limine --

23         THE COURT:  Right.

24         MR. STAMM:  -- excluding the motions to express or

25   dismiss.  That had originally been set for August 24th.

```
 1    Obviously the trial date's moved.

 2              THE COURT:  Right.

 3              MR. STAMM:  Chief Judge Moore's order kind of

 4    suspends deadlines, and I don't know if the Court wanted to

 5    reset that today to a reasonable time to get all the

 6    (inaudible) filled out?

 7              THE COURT:  No, I should have been clearer.  I

 8    should have been clearer.  That's why I asked -- one, it's no

 9    longer viable; and, two, that I was asking Mr. Grieco about

10    motion to suppress.  And the like.  But the motions in limine,

11    I thought that we could talk about that at the time, perhaps,

12    we discuss the 404(b), unless you think there are -- unless

13    you're aware right now of some critical issues in that regard

14    and I should just set a briefing schedule.

15              MR. STAMM:  From Edward Stamm for the United States

16    for the government.

17              No, we don't have anything at this point.  And

18    particularly with the new trial date coming, we just didn't

19    want to lose sight of it in case -- you know, we just wanted

20    to make sure the Court was aware that that one was floating

21    around, but it may make sense to have some time go by and see

22    what develops and what comes out of maybe Mr. Grieco's

23    response to the 404(b) --

24              THE COURT:  Right.

25              MR. STAMM:  -- 413 motion actually generate issues
```

1    and then could be set up to brief any motions in limine still

2    with plenty of time.

3           THE COURT:  All right.  That's what I thought.  And

4    I'll invite both parties and ask both parties to remind me of

5    that when we do get to -- when we do discuss the 404(b)

6    matter; that is that, you know, are there motions in limine

7    that now the parties anticipate, so we could do a briefing

8    schedule there.

9           The other matter which has no immediate issue but I

10   hope the parties address and take care of well before trial is

11   record custodian matters, you know, things that tend not to

12   get the focus of the lawyers because they are, in the trial

13   sense, ministerial but then at the last minute tend to be the

14   ones that have everybody spinning out.  So just be mindful of

15   discussing that type of issue as those matters come before

16   the -- you know, the government if you've got, I don't know,

17   bank rec -- any kind of records and record custodian matters.

18          MR. STAMM:  Edward Stamm for the United States, Your

19   Honor.

20          Actually, we had already discussed this in a

21   discovery conference we had not too long ago, and I think both

22   parties are working pretty agreeably on that front so that we

23   don't use up jurors' precious time.  Honestly, even that was

24   in line with COVID, but to try to keep the trial's focus on

25   what the case is really about, not arguing over records

```
 1   custodians or things of that nature.  So I think we'll be in

 2   pretty good shape from both sides, Your Honor, on that.

 3          THE COURT:  Well, good.  I mean, I am -- it's always

 4   better when you all are two steps ahead of me, as you seem to

 5   be.  And I think it is an important discussion not only for

 6   traditional efficiencies, but I do think in a COVID and

 7   post-COVID world, things that may not have drawn trial

 8   lawyers' attention really need to be wrapped up and tied with

 9   a bow, because jurors, even in May and June of 2021, will have

10   probably lingering concern about sitting together for hours on

11   end, and if the reason they are doing so is for something that

12   they then realize could have simply been taken care of while

13   they weren't there, that isn't going to inure to anyone's

14   benefit.  So I think trial conduct has to be reexamined by

15   everyone, and I'm glad that you already had the conversation.

16          Anything else I should take up on behalf of either

17   Mr. Menocal or the United States?

18          MR. STAMM:  Your Honor, Edward Stamm for the United

19   States.

20          And this is one -- the last issue we would have, and

21   this is one of the downsides, I guess, of a phone conference

22   versus an in-person.  You know, this will be one we would want

23   to raise at sidebar with counsel for the defendant, but I

24   don't know if there's -- who's on the phone line or whatever,

25   but it would have been our preference -- this would be our
```

```
 1    preference to do a sidebar.  I know that sounds odd, Your

 2    Honor.

 3             THE COURT:  Right.  No, I think I understand what

 4    you're speaking of.

 5             MR. STAMM:  Right.

 6             THE COURT:  And let me say, Mr. Grieco, there is --

 7    the Court noted that there is certain news reports of issues

 8    that have come up, and we had addressed an issue like that

 9    once before, and I think at this juncture it might -- and if

10    I'm speaking of the matter you are speaking of, Mr. Stamm, or

11    if I'm not, please tell me.

12             MR. STAMM:  You are, Your Honor.

13             THE COURT:  Okay.

14             MR. STAMM:  No, no, you are.  And I've spoken with,

15    you know, Mr. Kuehne, as well.

16             THE COURT:  Okay.

17             MR. STAMM:  And we were hoping to somehow handle it

18    in this way.

19             THE COURT:  Well, I think what we could do, and I

20    think the best to all concerned at this point is, Mr. Grieco,

21    if you would, and, of course, I think you -- it's not really

22    Mr. Stamm's place to be involved in this.  Maybe it would not

23    hurt to confer with him.  I think you should draw up a

24    document for Mr. Menocal's signature.  If you think it is

25    appropriately filed at this juncture under seal for reason
```

```
 1   that you would identify, you can.  If you think it's not
 2   necessary, that's fine.  But I think it would be best for
 3   Mr. Menocal, for you and for all parties to the litigation to
 4   have something in writing, and then I can have a hearing at a
 5   later date and talk to Mr. Menocal once more.  But I think my
 6   preference right now is to make it a waiver, part of the
 7   record in a documented fashion, and that's -- and I leave that
 8   to you to work out the verbiage and . . .
 9           But would that -- Mr. Stamm, would that address the
10   issue; and Mr. Grieco, do you concur with the Court's
11   proposal?
12           MR. STAMM:  Your Honor, Edward Stamm for the United
13   States.
14           That would be fine with us.  We -- again, you know,
15   as we had previously said the last time, it's not something we
16   particularly want to be in.  We do just want the record
17   protected, and that sounds like a very good way to do it, Your
18   Honor, in light of what's, you know, currently going on.  And
19   then it would allow Your Honor to conduct whatever is needed,
20   get the record prepared and kinda take the lead on that, which
21   is fine.
22           THE COURT:  Mr. Grieco, do you have any issue with
23   the proposal?
24           MR. GRIECO:  That's fine, Judge.  I always enjoy
25   hearing about myself discussed in the third person, but I can
```

```
 1   laugh about most (inaudible).  But that being said, yeah,
 2   that's fine, Judge.  We addressed this once before in person.
 3   More than happy to draft something up, and I'll -- you know,
 4   Mr. Stamm and I, we're in kind of direct-indirect
 5   communication on these issues, and we'll continue to be so.
 6   So I think we all are working toward the same goal, which is
 7   simply to protect the record.
 8            THE COURT:  Right.  And I think this is one of those
 9   situations that -- and I think both of you referenced it.  The
10   last time we had an in-person discussion -- and I just think
11   in light of the, you know, virtual litigation, it would assist
12   me, and I think it would protect the record and the parties if
13   we had some, you know, affidavit, some documentation of some
14   sort.  And then if I feel I need to make any further inquiry I
15   can do so, but with a basis.
16            MR. GRIECO:  Certainly, Judge.  Thank you.
17            THE COURT:  All right.  So those are our tasks.
18            Mr. Grieco, I'll be hearing from you on
19   September 18th in response to the 404(b) motion.  I will be
20   hearing from the parties within the next two weeks about their
21   preference for a trial date in May or June of 2021.  I'd like
22   you to give me at least two options, and then I'll set this
23   matter, and I will set it specially for that date.
24            And Mr. Grieco, as to the last document we
25   discussed, if you got that in within the next three weeks,
```

1   that would be fine.

2          MR. GRIECO:  Yes, Judge.

3          THE COURT:  Anything else I can take up on behalf of

4   any of the parties?

5          MR. STAMM:  Yes, Your Honor.  I'm sorry, Edward

6   Stamm for the United States.

7          I was just checking the calendar.

8          THE COURT:  Yes.

9          MR. STAMM:  And I note that I think when

10  Mr. Grieco's response comes in on the 404(b), if there was

11  anything we might want to file in reply, I don't know that we

12  would, but I note that it kinda hits right as the Jewish

13  holidays are coming in.  So it may be -- I don't know if we

14  would need any more time, but we might be coming back asking

15  for a little more time to reply.  It's hard to tell,

16  obviously, because we haven't seen it yet, but I just wanted

17  to alert the Court that we may make that request, and we would

18  talk to Mr. Grieco, unless the Court just wants to give a

19  little bit longer to reply.

20         THE COURT:  October 9th?

21         MR. STAMM:  Well, now, that should be fine, Your

22  Honor.  We'll get it done by then, because the trials won't

23  have kicked back, and looks like grand jury, according to the

24  Judge's order, won't be back in either.

25         THE COURT:  Right.

```
1            MR. STAMM:  So that should work fine, yes.
2            THE COURT:  Okay.  All right.  And, again, before we
3    conclude, my deepest apologies for the kerfuffle of our last
4    endeavor to speak.  I hope it's going to be my only dropped
5    ball during virtual court, but I don't think I'm that lucky.
6    But I am sorry for the time expenditure of all the parties.
7            All right, everybody.  Stay safe, stay distanced,
8    wear your masks, and we are adjourned.
9            VOICES:  Thank you, Your Honor.
10       (Proceedings concluded.)
11                         *  *  *  *  *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                          *  *  *  *  *

 2                          I N D E X

 3     Telephonic Status Conference                    3

 4                          *  *  *  *  *

 5                        E X H I B I T S

 6     (None.)

 7                          *  *  *  *  *

 8                          CERTIFICATE

 9          I, Stephen W. Franklin, Registered Merit Reporter, and

10     Certified Realtime Reporter, certify that the foregoing is a

11     correct transcript from the record of proceedings in the

12     above-entitled matter.

13          Dated this 30th day of NOVEMBER, 2020.

14

15          /s/Stephen W. Franklin
           _____
16          Stephen W. Franklin, RMR, CRR

17

18

19

20

21

22

23

24

25
```