UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20822-CR-WILLIAMS/TORRES(s)

UNITED STATES OF AMERICA

v.

JESUS MANUEL MENOCAL, JR.
_____/

### GOVERNMENT'S SUPPLEMENTAL NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States hereby gives supplemental notice of its intent to introduce additional evidence pursuant to Federal Rule of Evidence 404(b) regarding (1) the defendant's conduct in connection with his May 2013 traffic stop of A.G.; and (2) the defendant's conduct in connection with his Spring 2015 encounter with D.R.

### PROCEDURAL AND FACTUAL BACKGROUND

On August 10, 2020, the government filed its Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) (DE: 37). On September 14, 2020, the defendant filed his Opposition to Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) and Motion for Evidentiary Hearing (DE: 40), and on October 9, 2020, the government filed its Response thereto (DE: 49). As the government explained in its Response, the defendant's challenge to the evidence described in the government's Notice was limited to the evidence being offered solely pursuant to Rule 404(b), that being the defendant's sexual relationship with Police Academy trainee C.M. and the evidence establishing the defendant's actions in May and June 2015 bringing a number of as yet unidentified young females into Substation 5 alone, after-hours and/or on weekends, when the substation was not staffed or open to the public. (DE: 49 at 3).

While the Rule 413 and Rule 404(b) issues were in the process of being briefed by the parties, on August 26, 2020, the Court continued the trial date to May 24, 2021. (DE: 39). Recently, the trial was continued to October 25, 2021 (DE: 56). During the telephonic conference resetting the trial date, the Court also granted the government's request for additional time to submit, by March 29, 2021, this supplemental notice setting out additional potential Rule 404(b) evidence that the government may seek to offer at trial.[1]

The factual and procedural background of this case, including detailed summaries setting out the facts underlying the three charged incidents, as well as the facts relating to two other incidents of sexual assault being offered under Rule 413 and two other categories of evidence being offered under Rule 404(b), and the legal foundation for the admission of this evidence, was set out in the government's Notice (DE: 37) and its Response to the defendant's objections thereto (DE: 49). These factual summaries and legal foundations will not be repeated, but rather, are re-incorporated herein in support of the admission of the new Rule 404(b) evidence described in this supplemental notice.

## THE ADDITIONAL RULE 404(b) EVIDENCE

**1)  The Evidence Relating to A.G.**

The evidence relating to A.G. will consist primarily of the testimony of A.G., a young woman who was the subject of a traffic stop conducted by the defendant in May of 2013, in Hialeah. A.G. was in her mid-twenties when this incident occurred. The government expects that A.G. will testify that she was on the way to pick up her two youngest children who were being

---

[1] The evidence described herein was developed after the government filed its Response (DE: 49). The FBI 302 reports of all the witnesses mentioned who have been interviewed to date have been provided in discovery.

cared for in Hialeah.[2] Her two older children were in the car with her when she was stopped in Hialeah by the defendant, who was driving a dark unmarked police vehicle. The defendant explained to A.G. that he stopped her for a problem with her car's license tag, and that when he ran the tag it showed her vehicle registered in the name of her roommate, contrary to the explanation she gave that it was registered to her sister.

The defendant then told her that he would follow her to the Hialeah residence where she was picking up her younger children since it was likely she would otherwise be stopped again due to the problem with her registration.[3] When she arrived at that residence, her two older children exited the car and ran into the residence, and the defendant then called A.G. over to his car. The defendant told her to get into his car so they could go to the corner. A.G. described the defendant's request as flirtations in manner, rather than professional, and assumed that he wanted a sexual favor in exchange for having allowed her to continue driving after the traffic stop and for following her to her destination.

A.G. was upset and offended, refused, and yelled at the defendant, who then drove away from the scene. A.G. felt shocked, bothered, and degraded by the event and told no one at the time except for one HPD officer who A.G. knew.[4] Some years later, A.G. saw an upcoming

---

[2] As reflected in the FBI 302 report describing the interview of A.G., the investigators merely asked A.G. about a traffic stop in 2013, and it was A.G. who volunteered the identity of the officer involved and described the events in question. The 302 has been provided in discovery.

[3] As best she could recall, the defendant did not give A.G. a traffic ticket or summons to appear for court. However, the government did discover, in records provided by HPD, an A-Form reflecting a May 7, 2013 traffic stop of A.G. by the defendant. A review of the records maintained by the Miami-Dade Clerk of Court reflects that A.G. was issued two traffic citations by the defendant on that day, but also that both were dismissed by the State Attorney's Office in December 2014 with no penalty assessed against A.G.

[4] As reflected in the 302 report memorializing the FBI's interview of A.G., she has to date been unwilling to provide the identity of this officer because she did not want to get him involved. The government is continuing its efforts to identify this officer, and any new information developed will be promptly provided to the defense and submitted in a second supplemental notice, and if

television news segment about the defendant and two females, and she commented to her friend D.A. that the defendant had attempted to do the same thing to her.

Along with A.G.'s testimony, the government may offer the testimony of A.G.'s friend, D.A. The government expects that D.A. will testify that she was friends with A.G. for a number of years, and that at some point in approximately late 2019 or early 2020, A.G. told D.A. about being stopped in Hialeah by a police officer who followed A.G. home and asked her to get into his vehicle. She also told D.A. that after she screamed and yelled at the officer, the officer just drove away.[5] In addition, the government may offer relevant law enforcement records relating to the traffic stop in question, all of which have previously been provided to the defendant in discovery.

**2) The Evidence Relating to D.R.**

The evidence relating to D.R. will consist primarily of the testimony of D.R., a high school senior at the time of the incident in question. The government expects that D.R. will testify that on the date in question, which was around May 2015, she was with some of her high school friends at or near a park in the vicinity of Hialeah Miami Lakes High School ("HMLHS"). These friends included K.H. and A.M. The defendant and other HPD officers approached them, and the defendant separated D.R. from her friends and told the other officers that he would deal with her.

D.R. will testify that the defendant asked for her driver's license and checked it, and then asked for her phone number. She recalls that the defendant was speaking to her in a flirtatious

---

this officer has relevant evidence, the government may seek to offer that evidence pursuant to Rule 404(b).

[5] The government is cognizant of the fact that its use of the Rule 404(b) evidence contained in this supplemental notice will be subject to the limitations the rules place on the use of hearsay. As a result, the admission of some of this evidence may be dependent upon the cross-examination and/or arguments made by the defendant, and certain of this evidence may only become admissible on rebuttal. This supplemental notice attempts to provide the fullest possible notice of the scope of the evidence that the government believes may be admissible at some point during the upcoming trial.

tone and provided his first name, but she did not recall if he provided his phone number. The defendant then told her that he was taking her home, while her friends were left behind with the other officers. D.R. felt that she had no choice but to submit to the defendant and permit him to drive her home. D.R. will testify that she rode in the front seat of his police car, and that when they arrived at her residence, he asked her who else lived with her. She also recalled that the defendant texted her later that night or the next day asking her to call him, or if she was available, and she believed the defendant called her twice from a restricted number shortly after he brought her home.

The government further expects that D.R. will testify that she feared being raped by the defendant, a fear she shared with her mother, A.M.R., the same evening that the defendant drove her home. D.R. believed that the defendant must have sexually propositioned her or said something similar to cause her to have this fear.

The government expects that D.R.'s mother, A.M.R., will testify that D.R. told her about the incident with the defendant on the evening it occurred. During that evening, A.M.R. believes that D.R. contacted her to inform her that she and her friends, including A.M., had been detained by HPD officers for being in a park after hours. A.M.R. did not recall for certain if D.R. asked A.M.R. to pick her up, but instead believed she was going to be brought home by A.M.'s mother. A.M.R. recalled the incident being approximately seven years ago.[6]

---

[6] As the FBI 302 of this very recent interview reflects, A.M.R. was interviewed on March 25, 2021, which would indicate that A.M.R. believed the incident happened around the Spring of 2014, and that D.R. was around 16 years old at the time of the incident. A.M.R. explained that she did not report the incident to the police because she had no evidence and knew it would be her word against the word of a police officer. As of the date of filing of this supplemental notice, the government has not been able to identify any corresponding HPD records relating to this incident that would give an exact date, but this review is ongoing. The FBI 302 documenting A.M.R.'s interview has been provided to the defense.

A.M.R. stated that D.R. arrived home late that evening and was extremely nervous. D.R. told her that she had been driven home by an HPD officer who told D.R. that he would contact her later that evening after her parents were asleep so that he could pick her up to be with her. A.M.R. recalls that D.R. told A.M.R. that the officer wanted her sexually; he wanted to pick her up to have sex and that it was not simply A.M.R.'s assumption. A.M.R. took D.R.'s cell phone, and at about 1:00 or 2:00 a.m., a call came in from a restricted number. A.M.R. answered and confronted the caller, and the caller hung up. A.M.R. recalled only one incoming call that night, and D.R. never told her about any other similar calls.

D.R. described the HPD officer to A.M.R. in general terms at the time, and D.R. later pointed that same officer out when he appeared on a news segment they were watching. However, A.M.R. did not recall when the news segment aired or why the officer was on the news.

In addition to her mother, D.R. also told A.M., K.H., and V.P. about this incident shortly after it occurred, and the government also may offer the testimony of these individuals at trial. K.H. and A.M. were high school classmates and friends of D.R, and they were with D.R. when the encounter with the defendant occurred.[7] V.P. was a classmate of D.R, but she was not present during the incident. In addition, the government may offer relevant law enforcement records relating to this incident, all of which have previously been provided to the defendant in discovery.

The government expects that A.M. will testify that he was with D.R. and another friend in the vicinity of HMLHS when they were stopped and separated by a number of HPD officers. During the encounter, the defendant handcuffed A.M., but neither A.M. nor his friends were arrested. A.M. also will testify that either later that day or the next day, D.R. told him that she

---

[7] Although they were friends at the time of the incident in 2015, K.H. informed the government that they are no longer speaking or friends.

felt violated by the defendant, either by something he said to her or by his asking to take D.R. home.  A.M., who was picked up by his mother from the scene, did not recall if the defendant in fact took D.R. home.[8]  A.M. remembered D.R. wanted her mother to drive her home.

The government expects that K.H. will testify that she, D.R., and A.M. were smoking marijuana in a park in the vicinity of HMLHS in Hialeah when a marked HPD unit, driven by the defendant, arrived.  The defendant took D.R. aside and dealt with her alone, while at least one other officer arrived at the scene.  D.R. later told K.H. that the defendant had asked for her phone number and propositioned her to meet up with him, implying that A.M. would not get in trouble if D.R. agreed.

The government expects that V.P. will testify that in 2015, her classmate D.R. told her about a recent interaction D.R. had with the defendant.  Specifically, D.R. told V.P. that the defendant had propositioned her inside his police car for some type of sexual favor in order for D.R. to avoid getting into some kind of trouble.  D.R. also told V.P. that the defendant asked for D.R.'s phone number and that she was very upset about the incident.  V.P. did not know what favor was requested or what type of trouble D.R. was facing.  V.P. later learned of the defendant's arrest through social media.

## ADMISSIBILITY OF EVIDENCE UNDER RULE 404(b)

Because the government has extensively briefed the legal foundation for the admission of Rule 404(b) evidence in this case, *see* DE: 37 at pp. 23-31 and DE: 49 at pp. 3-20, the government will not repeat those arguments here.  The government readopts and incorporates by reference

---

[8] A.M. subsequently saw online that the defendant had been fired or suspended because of multiple incidents against him.  A.M. had a screenshot image of the defendant that he received from a friend, which A.M. shared with the FBI and described as a photograph of the same officer from the incident in the park.  That screenshot has been provided in discovery.

those arguments as they relate to the additional Rule 404(b) evidence described in this supplemental notice. Accordingly, in this supplemental notice, the government will lay out the specific rationale for why this additional evidence is admissible under Rule 404(b), keeping in mind that "Rule 404(b) is a rule of inclusion which allows prior bad acts evidence unless it tends to prove only criminal propensity." *United States v. Gates*, 351 F. App'x 362, 367 (11th Cir. 2009); *United States v. Rojas*, 145 F. App'x 647, 649 (11th Cir. 2005).

First, the government is offering the evidence regarding the defendant's encounters with A.G. and D.R. to help prove the defendant's intent, knowledge, motive, plan, absence of mistake or accident, opportunity, identity, and *modus operandi*. Both of these incidents involved the defendant misusing his police position and authority to provide him with an opportunity to isolate or detain young women under his control in order to proposition them for sexual favors in exchange for allowing or offering to allow them to avoid actual or implied legal trouble, and both are similar to the three charged incidents in important ways.

The traffic stop of A.G. and subsequent solicitation of her for a sexual favor is similar to the defendant's traffic stop and detention of Victim 1, who he then brought to Substation 5 and solicited for sex. Although A.G. had two small children in the car and only a possible traffic infraction at issue, and thus was not an appropriate subject to detain and bring to the police station as he did with Victim 1, the defendant instead followed her to her destination. When her children were in the house and she was alone, he then solicited her to get in his car and "go to the corner" for what she understood to be sexual payback for allowing her to drive to her destination. In addition, as with Victim 1 and Victim 3, where the defendant either used the explicit or implicit threat of arrest or the promise of release to secure sexual favors, here the defendant's request for A.G. to get in his car and go to the corner was directly linked to his having allowed her to drive

her car despite the alleged traffic infraction.

The defendant's encounter with D.R. bears a resemblance not only to the three charged incidents, but also to the incidents involving Victim 4 and Victim 5 that the government is offering under Rule 413 and Rule 404(b). As with Victim 1 and Victim 2, the defendant separated D.R. from the individuals she was with and interacted with her alone. And, similar to his dealings with Victim 3, the defendant isolated D.R. from both the individuals she was with and from the other HPD officers on the scene. Moreover, the defendant's interactions with D.R. are strikingly similar to his treatment of Victim 4 and Victim 5. With both Victim 4 and Victim 5, the defendant used his police authority to demand that the victim get into his police car, promising to take Victim 4 home and Victim 5 to her stated destination. The defendant then used his control over these victims to demand sexual gratification from them. Similarly, here, he demanded that D.R. get into his police car so he could drive her home, and then he used the drive as an opportunity to proposition her for some type of sexual favor in the future, although he did not sexually assault her as he did Victim 4 and Victim 5.

Second, the proffered evidence, including the testimony of the women solicited by the defendant, the testimony of the witnesses who either observed the events in whole or in part or were told about them by A.G. and D.R. close to the time of the events, and the relevant law enforcement records documenting the stops and encounters, is more than sufficient to satisfy Rule 404(b)'s requirement that there be "sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007); *see also United States v. Lampley*, 68 F.3d 1296, 1299 (11th Cir. 1995) (uncorroborated testimony of one witness sufficiently credible to be admitted, even when the witness's accounts revealed certain inconsistencies).

Finally, the third prong of the Rule 404(b) analysis – the Rule 403 balancing test – also is satisfied because the probative value of the evidence regarding A.G. and D.R. is not "*substantially outweighed* by unfair prejudice" based on "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."  *Rojas*, 145 F. App'x at 649-50 (quoting *Jernigan,* 341 F.3d at 1282; emphasis in original).  This is particularly the case since the Eleventh Circuit has recognized that Rule 403 is "an extraordinary remedy to be used sparingly," *Syed*, 616 F. App'x at 980, with "the balance '… struck in favor of admissibility.'" *Edouard*, 485 F.3d at 1344 n.8 (quoting *United States v. Smith,* 459 F.3d 1276, 1295 (11th Cir. 2006)).

The government needs the proposed Rule 404(b) evidence because none of the actual sexual abuse committed by the defendant against the victims in the three charged counts was witnessed by a third party or captured on Substation 5's surveillance cameras, and each victim undoubtedly will be thoroughly cross-examined.  This supplemental Rule 404(b) evidence is significant because it will show the defendant using the same method of abusing his police position and engaging in similar conduct with other young women during the same basic timeframe. Moreover, as explained in more detail above, the proposed new evidence is similar in many important ways to the charged conduct and raises no risk of unfairly inflaming the jury because it is far less graphic than the evidence that will be offered to prove the three charged offenses as well as the Rule 413 evidence of the sexual assaults of Victim 4 and Victim 5 to which the defendant has not objected.  Finally, the new Rule 404(b) evidence is not remote in time from the charged conduct.  D.R.'s encounter with the defendant occurred in early 2015, extremely close in time to the charged offenses (all of which occurred in the first half of 2015), while the incident with A.G.

10

took place in 2013, still well within the timeframe approved by the Eleventh Circuit. *See Syed*, 616 F. App'x at 980-81 (the court looked to the similarity of facts between the prior act and the instant offense, even though the communications were over 10 years old); *United States v. Pollock*, 926 F.2d 1044, 1047–48 (11th Cir. 1991) (holding that a five-year gap between the prior act and charged incident was not an abuse of discretion); *Lampley*, 68 F.3d at 1300 (providing that a 15-year time-span did not render the extrinsic acts too remote for proper consideration, despite the fact that the acts involving drugs differed in nature).

### **Limiting Instructions to Mitigate Any Prejudice**

Even if the Court concluded that there was some possible risk of undue prejudice arising from the proposed Rule 404(b) evidence, that risk can be reduced with an appropriate limiting instruction. Indeed, the Eleventh Circuit has made it clear that limiting instructions can be used to mitigate any possible unfair prejudice. *See Jernigan*, 341 F.3d at 1282 (in a case where the district court gave the jury two separate limiting instructions regarding the impermissibility of considering defendant's previous convictions as propensity evidence, any "unfair prejudice that may have existed was mitigated by the district judge's limiting instruction.").

## CONCLUSION

As described herein, and in compliance with this Court's recent Order (DE: 56), the government has hereby provided supplemental notice of the additional Rule 404(b) evidence of which it currently is aware and that it may seek to use at trial. The government may use this evidence in its case-in-chief, during cross-examination of defense witnesses, and/or in its rebuttal case. In addition, if the government becomes aware of new additional Rule 413 or Rule 404(b) evidence, it will promptly provide a second supplemental notice to the Court and the defendant.

Respectfully submitted,

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>ACTING UNITED STATES ATTORNEY | PAMELA S. KARLAN<br>PRINCIPAL DEPUTY ASSISTANT<br>ATTORNEY GENERAL |
| *s/ Edward N. Stamm*<br>EDWARD N. STAMM<br>FL Bar No. 373826<br>Assistant United States Attorney<br>United States Attorney's Office<br>Southern District of Florida<br>99 NE 4th Street<br>Miami, FL 33132<br>Tel: (305) 961-9164<br>edward.stamm@usdoj.gov | *s/ Samantha Trepel*<br>SAMANTHA TREPEL<br>Court ID No. A5501689<br>Special Litigation Counsel<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave., NW<br>Washington, DC   20530<br>Tel: (202) 305-3204<br>samantha.trepel@usdoj.gov |

*s/ Ilham Hosseini*
ILHAM HOSSEINI
Court ID No. A5501904
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9297
ilham.hosseini@usdoj.gov