**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 19-20822-CR-WILLIAMS/TORRES(s)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| **Plaintiff,** | § |
| vs. | § |
| JESUS MENOCAL, JR., | § |
| **Defendant.** | § |
| _____/ | § |

## THE DEFENDANT'S OBJECTION TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE §404(b) AND FEDERAL RULE OF EVIDENCE §413(D.E.s 37,57)

**COMES NOW,** the Defendant, Jesus Menocal, by and through his undersigned counselors, and hereby files this objection to the government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) (DE: 37) and to the government's Supplemental Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (DE: 57).

## FACTS AND PROCEDURAL HISTORY

1. On December 12, 2019, a federal grand jury returned an indictment (DE: 3) charging the Defendant with two (2) counts of violation of 18 U.S.C. §242.

2. On May 27th, 2020, the government filed a superseding information (DE: 25), charging an additional count pursuant to 18 U.S.C. §242 alleging the willful deprivation of the right to be free from unreasonable search and seizure by person acting under the color of law on an additional victim from an incident alleged to have occurred May 31, 2015.

3. On August 10, 2020, the government filed its Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) (DE: 37).

4. On September 14th, 2020, the Defendant's previous counsel filed his Opposition to Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) and Motion for Evidentiary Hearing. (DE: 40).

1



RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

5. On March 29, 2021, the government filed its Supplemental Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b).[1]

6. Previous counsel did not file a response to the government's supplemental pleading.

7. On July 15th, 2021, the undersigned counsel filed their Notice of Substitution of Counsel. (DE: 64).

8. On July 16th, 2020, this court granted the Defendant's substitution of counsel.

9. Following undersigned counsel taking over this matter, the court held two (2) status conferences on August 19th, 2021, and August 23rd, 2021, respectively.

10. The court granted defense counsel's request for forty-five (45) days to review the current pleading pertaining to Federal Rules of Evidence 404(b) and 413 and to file an appropriate response.

11. In previous counsel's filing "Opposition to Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b) and 413 the Defendant specifically objected to the introduction of the government's evidence pursuant to Federal Rule of Evidence 404(b), previous counsel did not address the evidence sought to be introduced pursuant to Federal Rule of Evidence 413.

12. The Defendant maintains his objection to the introduction of evidence pursuant to Federal Rule of Evidence 404(b) and hereby, similarly, objects to the introduction of any evidence pursuant to Federal Rule of Evidence 413.

13. The Defendant further renews his previous request for an evidentiary hearing on the Government's Notice of Intent.

## EVIDENCE SOUGHT TO BE INTRODUCED PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b).

1. **The consensual sexual encounter with C.M.**

2. **Video Footage of Substation 5**

3. **Evidence of alleged sexual encounter with T.G.**

4. **Evidence of alleged sexual encounter with L.C.[2]**

---

[1] On March 15th, 2021, the court conducted an initial hearing on the initial Notice to Introduce Evidence Pursuant to Fed. R. Evid. 404(b).

[2] Both T.G. and L.C. are further sought to be introduced by the government pursuant to Federal Rule of Criminal Procedure 413.



5. **Evidence of alleged encounter with A.G.**

6. **Evidence of alleged encounter with D.A.**

7. **Evidence of alleged encounter with D.R. and**

8. **Statement of D.R.'s mother A.M.R. advising her daughter told her about encounter with the Defendant.**

9. **Statement of K.H. corroborating D.R. encounter.**

10. **Statement of A.M. corroborating D.R. encounter.**

11. **Statement of V.P. advising that D.R. told her about encounter with Defendant.**

## MEMORANDUM OF LAW REGARDING ADMISSIBILITY OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) and 413.

### I.  FEDERAL RULE OF EVIDENCE 404(b)

Federal Rule of Evidence 404(b) states that evidence of other crimes or wrongs, or acts *may* be admitted to prove "…purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Further, 404(a)(1) provides that [e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). The court's analysis as to whether to admit evidence of other crimes, wrongs or acts requires the employment of a three-pronged test. First, the court must find that the evidence is relevant to an issue other than the defendant's character. *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).  In assessing the reason for its introduction, the court may consider intent, knowledge, motive, identity, and modus operandi but not as proof of the defendant's character. Secondly, the court must find that the government can prove to a reasonable jury the prior bad acts to have been committed by the defendant by a preponderance of the evidence. *United States v. Edouard*, 485

3

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

F.3d 1324, 1344 (11th Cir. 2007); See also *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). Finally, if the government can overcome both the first two prongs the court must then employ the balancing test enumerated in Federal Rule of Evidence 403. Specifically, the court must find that the evidence sought to be introduced is of such a probative nature that it outweighs the prejudicial effect on the jury.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*

## II.     THE GOVERNMENT'S PLEADING DOES NOT COMPORT WITH THE CURRENT REQUIREMENTS OF THE RULE.

In the Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b), they advise of their intent to introduce the above referenced items for the purpose of establishing "the defendant's intent, knowledge, motive plan, absence of mistake or accident, opportunity, and identity and *modus operandi"* (DE: 37, p. 25). That type of general statement is no longer sufficient notice.

In December of 2020, the United States Supreme Court amended the notice requirements of Fed. R. Evid. 404(b). In particular, the amendment requires the government to place the Defendant on specific notice as to what the extrinsic evidence is being introduced to prove. The previous ideation of the rule would allow for the government to put the defendant on "general notice" Fed. R. Evidence 404(b) (2019). This vague requirement usually led to the practice engaged in here by the government which is to merely list the reasons the evidence could be introduced without placing the Defendant on notice with any specificity. Although the government has offered a lengthy and comprehensive pleading, their argument as to the first prong for the

4

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

court's consideration engages in the same boilerplate listing that prompted the 2020 change to the rule. While the government did file its initial pleading on August 10, 2020, the change made to Fed. R. Evid. 404(b) on December 1, 2020, now makes that notice deficient. Accordingly, the government's filing fails to put the Defendant on notice what specifically the evidence sought to be introduced is being used to prove and how it purports to prove that element. Accordingly, prior to ruling on the substance of the government's position the notice should be stricken without prejudice to allow the government to amend thereby providing the Defendant with proper notice as to what these "prior acts" are relevant to. Nevertheless, in the interest of complying with the court's order, undersigned counsel, will address the suspected intent of the government in this memorandum.

### III.   PRONG I: WHAT IS THE EVIDENCE RELEVANT TO OTHER THAN THE DEFENDANT'S CHARACTER?

Prior bad act evidence is admissible unless "it tends to prove only criminal propensity." *United States v. Gates*, 351 F. App'x 362, 367 (11th Cir. 2009). In this instance the 404(b) evidence sought to be introduced by the government does just that. "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." *Wilson v. Jara,* No. 10–0797 JB/WPL, 2011 WL 6739166, at 5 (D.N.M. Nov. 1, 2011) (Browning, J.). "The rule, however, has a number of 'exceptions'—purposes for which such evidence will be admissible." *Wilson v. Jara,* 2011 WL 6739166, at 5. Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Fed. R. Evid. 404(b)." *United States v. Rodella*, 101 F. Supp. 3d 1075, 1109 (D.N.M. 2015). Under the first prong of the *Huddleston* test the government must identify the

5

purpose for the introduction of the prior bad acts. The enumerated permissible reasons for admission of other, crimes, wrongs, or acts under 404(b) are largely inapplicable to the facts alleged in this case.

The allegations set forth within the indictment are of a sexual nature. Specifically, that the Defendant used his position as a law enforcement officer to force non-consensual encounters with female victims. As such, knowledge, identity, motive, plan, absence of mistake and opportunity are not relevant. Knowledge of the interactions of set forth with the respective victims in the indictment is built into the offense. It would be impossible for a person to commit the acts set forth- unknowingly. Similarly, motive is part and parcel with a sexual offense. It seems unlikely that the government will struggle with proving the motive behind their allegations to the jury. Sexual gratification is in and of itself a viable motive. Moreover, the Defendant does not intend to set forth a defense that a sexual encounter occurred mistakenly- that is non-sensical. Further, while the defendant's entry of a plea of not guilty makes intent relevant, the nature of the allegations make the evidence sought to be introduced irrelevant to that issue. *Zaptata* at 1358. This leaves the only possible consideration for the court when considering the introduction of the 404(b) evidence, *modus operandi*.[3]

*MODUS OPERANDI*

*Modus Operandi* is a specific legal term referring to the "way of operating." Blacks' Law Dictionary. *Modus Operandi* is often referred to as a "fingerprint" or a unique signature that identifies the characteristic of a crime. "For Rule 404(b) evidence to be admitted to prove modus operandi, the government must show 'a high degree of similarity between the other

---

[3] It should be noted that in their pleading (D.E. 37, p. 25) the government makes a point of italicizing "modus operandi". It is unclear if that is to highlight it as their intended purpose for introduction or simply because it is a Latin phrase.

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

act and the charged crime.'" *United States v. Trenkler*, 61 F.3d 45, 52 (1st Cir. 1995) (citing United *States v. Ingraham*, 832 F.2d 229, 231–33 (1987) ). The government "must demonstrate that the two acts exhibit a commonality of distinguishing features sufficient to earmark them as the handiwork of the same individual." *Id*. at 53 (citing *Ingraham*, 832 F.2d at 231). Moreover, under Federal Rule of Evidence 104(b), district courts must condition the admission of modus operandi evidence "on a showing that the shared characteristics of the other act and the charged offense are sufficiently idiosyncratic that a reasonable jury could find it more likely than not that the same person performed them both." *Id*. In resolving whether the evidence supports an inference that the incidents are "sufficiently idiosyncratic," the inquiry "must focus on the 'totality of the comparison,' demanding not a 'facsimile or exact replica' but rather the 'conjunction of several identifying characteristics or the presence of some highly distinctive quality.' " *Id*. at 54 (quoting *Ingraham*, 832 F.2d at 232–33)." *United States v. Mercado-Martinez*, 919 F.3d 91, 102 (5th Cir. 2019). As discussed in more detail below, the Government cannot establish modus operandi.

## IV.    PRONG II: GOVERNMENT MUST BE ABLE TO PROVE PRIOR BAD ACTS BY A PREPONDERANCE OF THE EVIDENCE.

While the trial court is not required to enter a preliminary finding that the government's evidence has been proven by a preponderance of the evidence, it must still examine the evidence sought to be introduced and determine based on the totality of the circumstances whether a reasonable jury would find more likely than not that the defendant committed the act in question. "In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

televisions were stolen—by a preponderance of the evidence." *Huddleston* at 690. Admittedly, preponderance of the evidence is a lower standard than that of reasonable doubt, however, it still requires the government to provide proof that the prior acts were more likely than not committed by the defendant. The evidence supporting the extrinsic allegations is limited and tenuous. Each of the items of evidence sought to be introduced by the government, as discussed in more detail below, suffers from significant and fatal flaws requiring their exclusion.

## V.     PRONG III: FEDERAL RULE OF EVIDENCE 403 BALANCING TEST

Provided that the government can surpass the first two prongs of analysis the court is then required to apply the balancing test enumerated in Federal Rules of Evidence 403 and determine whether the evidence offered more is prejudicial than probative. Specifically, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. All the evidence of prior acts pertaining to extraneous alleged victims and witnesses as well as the irrelevant, and poor-quality video evidence creates the very real prospect of prejudicing the jury. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. So, the Committee Notes to Rule 403 explain, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. App., p. 860." *Old Chief v. United States*, 519 U.S. 172, 180 (1997)(Internal citations omitted.)

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

The government is seeking to introduce the Defendant's propensity for the criminal acts and "(a)lthough ... 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." *United States v. Moccia,* 681 F.2d 61, 63 (C.A.1 1982). *Id*. at 181.

## VI.   404(b) EVIDENCE

### A.   The Evidence Relating to C.M.

The first instance of 404(b) evidence the government seeks to introduce pertains to a consensual adult relationship with a trainee at the police academy identified as C.M. Under the first prong of the court's analysis this evidence should not be admitted as it is not relevant to prove anything other than impermissible character evidence. As noted in previous counsel's initial response in Opposition to Government's Notice of Intent to Introduce Evidence…" (DE: 40), the Defendant is currently under indictment for allegedly engaging in non-consensual sexual assaults with three (3) separate victims while acting under the color of law. Count I of the indictment charges that on or about June 13, 2015, the Defendant, for his own sexual gratification, directed Victim 1 (M.D.) to remove her shorts and underwear and turn around. Count II of the indictment charges that during an incident that occurred between January 1, 2015, and March 31, 2015, the Defendant exposed his bare penis to Victim 2 (C.R.) and placed her hand on it and kissed her. Finally, Count III of the indictment added as part of the superseding indictment filed May 27th, 2020, charges the Defendant with causing Victim 3 (E.R) to perform oral sex on the Defendant. Each of the charged instances are alleged non-consensual encounters with civilian victims while the Defendant was on duty as a Hialeah police officer. The 404(b) evidence pertaining to C.M. could not be more different.

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

According to the government's Notice, the evidence sought to be introduced "will establish that the defendant, despite the Academy's prohibition of sexual relationships between instructors and trainees, had an improper consensual sexual relationship with C.M." (DE: 37, p. 12). If we accept the government's proffer *in arguendo* for purposes of analysis under prong I it fails to meet even the most basic level of relevancy. The government is using a consensual encounter between two adults to support allegations of sexual assault. Any consensual encounter with C.M. would fail to establish any of the requisite enumerated reasoning for admission of prior act evidence. "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston* at 1499. The government's theory of relevance is that because sexual relationships between instructors and trainees are prohibited by policy (although not illegal) the Defendant engaged in sexual assault of the alleged victims listed in the indictment. That is a tenuous nexus at best. The introduction of this evidence serves no other function than to suggest that the Defendant is of bad moral character because he engaged in an activity that was prohibited by the academy policy. The government further postures that any consensual encounter with C.M. is relevant because the Defendant was her instructor. This is not accurate and causes this evidence to fail not just as irrelevant, but also under prong II of the analysis.

The government further seeks the introduction of this evidence to imply that because he was an instructor at the academy, he was in a position of authority which is relevant to his use of his badge to commit the charged offenses. Aside from this being a strained connection it is also inaccurate. Presuming C.M. testifies truthfully, she will be compelled to concede that the Defendant was not in fact her instructor. C.M. was enrolled at the Police Academy at Miami-Dade College North Campus. The Defendant was assigned there, but not as C.M.'s instructor. Rather,

10

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

the Defendant acted as a recruiter and a physical training officer. The Defendant had no authority over C.M. He did not hand out her grades, he did not do her evaluations, he had no authority to discipline her or expel her from the academy. As such, the government is manufacturing an image of impropriety to allow for the introduction of nothing more than bad character evidence.

Furthermore, to admit the evidence under Prong III pertaining to an alleged relationship with C.M., the court must assess whether the government would be able to prove to a reasonable jury by a preponderance of the evidence that this relationship took place. To accomplish this, the government will present testimony of C.M. C.M. has already provided multiple conflicting statements regarding this alleged relationship. Any testimony she provides at trial will inevitably, and yet again, conflict with a previous statement.

Finally, evidence of this relationship has no probative value to the case at bar. The government seeks to introduce testimony and evidence of messages wherein the Defendant allegedly asks the witness to not reveal the affair. The Defendant is married with two children. Accepting the facts in the light most favorable to the government, this is an extra marital affair between two consenting adults that violated Police Academy policy. This has no probative value to an allegation of sexual assault of a civilian. It does not serve to support or prove any necessary element and would prejudice a jury. "[I]n addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged." *United States v. Phillips,* 599 F.2d at 136. Furthermore, the government's theory on the admissibility of this evidence is that the Defendant used his position to not only pressure C.M. into a sexual relationship, but then when she became

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

pregnant as a result of that relationship the Defendant bullied her to have an abortion. In their

pleading the Government provided that, "C.M. eventually became pregnant with the defendant's

child. When she told him, the defendant was very upset and repeatedly pressured her to have an

abortion, telling her 'if you want to be a police officer, you can't have a baby right now.' He told

her that if she told somebody about their relationship or the pregnancy, he would make sure that

she never became a police officer and that he would call his connections from every department

and tell them not to hire." (DE: 37, p. 13). The government's argument is, in addition to the

conflicting statements provided by C.M., not supported by their own evidence:



As reflected in the above text message strain pulled from Bate Stamp: US0195445-US0195446

provided by the government in their discovery filing, the Defendant did not engage in the manner

the government suggests. In addition to being irrelevant, and prejudicial, the government's own

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

exhibits negate their theory making it impossible to believe that a reasonable jury could find by a preponderance of the evidence that the Defendant misused his authority to compel a sexual relationship.

**B.  Evidence Related To Hialeah Police Substation 5**

The government is seeking to introduce video of what they purport is the Defendant entering the Hialeah Police Department's Substation 5 (hereafter "Substation 5") with various women. This evidence is not relevant and is apropos of nothing. The government has painted an image in its pleading of Substation 5 as little more than an abandoned shack that the Defendant used as an out of the way location to engage in nefarious acts. This is a mischaracterization. Substation 5 is a remote location for the Hialeah Police Department. It was and remains a fully functional police location. The videos that government seeks to introduce are inuendo in the worst way.

Under the Prong I analysis the court would be strained to find what the video evidence is relevant to prove. The government puts forth that "[a]s part of its investigation of Victim 1's complaint against the defendant in June 2015, HPD retrieved and preserved a limited number of video recordings from May and June 2015, showing the defendant escorting young women into Substation 5. Aside from Victim 1, HPD was unable to identify any of the ten women portrayed." (DE: 37, p.32). This excerpt from the government's notice reveals the problems with the introduction of this evidence.

Each of the videos sought to be introduced shows a person, which the government believes to be the Defendant entering a functional police station while in course of his duty as a police

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

officer.[4] None of the people he is escorting have been identified. This means that no one can testify as to what the reason for the entry into the station was, what occurred within the station, and whether anything improper occurred. By showing these videos to the jury the government can simply imply without corroboration that on each of these occasions the Defendant engaged in some illegal activity, which is also completely unknown.

Moreover, the government's representation as to what the videos show is generous at best. By their own admission, the quality of the video is poor.[5]  How the Government can identify the age of these women or classify them as "young" is unknown. Additionally, a review of the videos negate the proposition that this is some out of the way, abandoned and unused police structure. The videos themselves show multiple police cruisers parked in the parking lot indicating that the substation is both active and populated.

Under a Prong II analysis, the Defendant will concede that a reasonable jury could conclude that the videos show him entering the Substation. But, more germane to the court's consideration under Prong II is the question "what is that evidence of ?" As discussed above, the government is seeking the introduction of uncorroborated video evidence with no context or framework to imply that the Defendant not only committed the offenses he is charged with, but many others as well. This will serve no other function than to confuse the jury, substantially delay the trial on the merits of the case, and attempt to convict the Defendant by suggestion.

This evidence also fails under the Prong III analysis in that it is most certainly more prejudicial than probative. The videos show nothing relevant to the pending charges and therefore

---

[4] Due to poor quality and the angle of the camera, it is not possible to positively identify the Defendant from the video. The government is relying also on key card access logs to tie these images to the Defendant.
[5] Government's proposed jury questions included inquiries regarding the poor quality of their video evidence.



RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

have no probative value. The suggestion the Government is seeking is that on each of these occasions the Defendant committed an act similar to that with which he is charged. There is simply nothing to support that. Finally, the Defendant would be prejudiced by the introduction of these videos in that he can longer access the entirety of the footage which makes it impossible to rebut the government's implication. These videos were "cherry-picked" by Hialeah Police Department during their investigation into the allegations of Victim 1. They are of a limited scope in time and were hand selected because they show the Defendant with females. The Defendant should have access to every minute of the video from the time frame selected by the government. It is likely that a thorough, and less targeted review, would show the Defendant entering the Substation accompanying males. Any such video would scuttle the government's entire theory and rationale for the introduction of this evidence.

### C.  <u>Evidence Related To A.G.</u>

The government is seeking to introduce evidence of a traffic stop in 2013 of A.G. Specifically, sometime in 2013 a traffic stop of A.G. occurred around 8th Avenue in Hialeah. According to A.G., the officer who stopped her was the Defendant, Jesus Menocal.[6] According to the F.B.I. 302 of A.G. (Gov't Discovery Bate Stamp: US0195755-US0195757), she was driving in Hialeah with her two minor children. The Defendant stopped A.G. for not wearing a seat belt. After asking for her registration, it became known that the vehicle was registered to another person. After providing A.G. with a promise to appear the Defendant offered to follow her to her destination to ensure she was not stopped by another officer. After arriving at the location, the Defendant called her to his vehicle. "[A.G.] walked to the driver's side door. The [Defendant] told

---

[6] A.G. identified the Defendant from a local news story following the arrest of the Defendant on the instant indictment.

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

her to enter his vehicle, and they could go to the corner. She [got] very upset and told him, no. 'This is why I don't trust you guys. You're a pig and a pervert." (Gov't Discovery F.B.I. 302 Bate Stamp:US0195756.)

Once again, the government is unable to provide any element that this encounter would be relevant to prove. In fact, the encounter itself is rather uneventful. The government is relying on the subjective belief of A.G. that the Defendant's invitation to get in the car was a sexual proposition. There is nothing other than A.G.'s interpretation, aided by her viewing of a news story over eight years later, that support that this was an invitation to engage in a sex act. The admission of this testimony, in addition to extending an already lengthy trial, will serve to confuse the jury and again allow the government to prosecute the Defendant by inuendo and suggestion.

Even accepting A.G.'s account and recollection as accurate, it fails to prove a relevant matter by a preponderance of the evidence. Admittedly, a reasonable jury could find by a preponderance of the evidence that the Defendant stopped A.G. And, although less likely, it is possible that a reasonable jury could even find that the Defendant invited A.G. to enter his vehicle. That is the extent of what could be offered with any certainty. Any testimony elicited from the witness that she believed the Defendant was propositioning her for a sex act would be immediately subject to an objection for speculation. The testimony is relevant to nothing, unprovable, has no probative value to the facts at issue and is significantly prejudicial.

The government has also included in its supplemental notice of intent to improperly bolster any admitted testimony of A.G. by attempting to elicit testimony from A.G.'s friend, D.A. According to its pleading the government "may offer testimony of A.G.'s friend …that she was friends with A.G. for a number of years, and that at some point in approximately late 2019 or early 2020, A.G. told D.A. about being stopped in Hialeah by a police officer…" (DE: 57, p. 4).

16

RATZAN &
FACCIDOMO LLC

"Bolstering and vouching are much alike and go to the heart of a fair trial. Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury. *United States v. Sanchez,* 118 F.3d 192, 198 (4th Cir.1997). A prosecutor may ask a government agent or other witnesses whether he was able to corroborate what he learned in the course of a criminal investigation. However, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining how the information was corroborated and where it originated. *See United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir. 1993); *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999).   In this instance, the government is seeking to elicit testimony of a friend to say that the friend was told about the incident. They are asking to introduce hearsay testimony to suggest to the jury that because A.G. may have mentioned the incident, it must be true. Notwithstanding this testimony failing under all three of the prongs for a 404(b) analysis, it is also soundly precluded by Federal Rule of Evidence 801.

    D.  **Evidence Related To D.R.**

    The government advises that they will seek to introduce live testimony of D.R. at trial; however, for purposes of their notice they rely heavily on the interview conducted by Special Agent Bobbitt and Special Agent Gibson of D.R. which is memorialized in the F.B.I. form 302 (Gov't Disco. Bate Stamp No.: US0195796-US0195798). Presuming D.R. will testify consistently with what is reflected in the 302, it is unclear what this alleged encounter with the Defendant is relevant to prove. According to the government, sometime in 2015, "[D.R.] was with some of her high school friends in the vicinity of Hialeah Miami Lakes High School… the Defendant and other HPD officers approached them, and the Defendant separated D.R. from her friends and told the other officers that he would deal with her." (DE: 57, p. 4). The Defendant then allegedly drove

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

D.R. home and asked for her phone number. D.R. received a text that night that she believed came from the Defendant.[7] She also received two phone calls that she did not pick up and were from a restricted number. "The government further expects that D.R. will testify that she feared being raped by the defendant." (DE: 57, p. 5). The government's pleading once again fails to properly place the Defendant on notice of what the evidence pertaining to D.R. is relevant to prove. Instead, the government once again relies on the list of possible reasons contained in Federal Rule of Evidence 404(b), which under the amendment to the rule that went into effect December of 2020 renders the notice itself defective. That said, the deficiency of the notice is a moot point as the evidence sought to be introduced does not meet any of the reasons set forth in Rule 404(b). Even if the government can surpass a second prong analysis, which they cannot, this evidence does not have any relevance.

As reflected in the government's own discovery, the high school students were stopped smoking marijuana. D.R. was a single female high school student in the company of older male students possibly engaged in illegal activity. Even if we accept the proffer from the government, this encounter is quite possibly the Defendant acting in D.R.'s best interest and removing her from a toxic situation. Either way, introduction of this evidence is not relevant and does not support any of the enumerated reasons within 404(b).

Moreover, the government will not be able to overcome the burden of proving this encounter by a preponderance of the evidence. A review of both the government's notice in conjunction with the interview of D.R. reveals that there are significant evidentiary issues with the statement of D.R. First, at no time does she indicate that the Defendant made any sexual advance or even engaged in a sexual overture toward her. Rather, "D.R. *believed* that the defendant *must*

---

[7] The referenced text message came from an unidentified number, did not identify the sender, and is no longer available.

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

*have* sexually propositioned her or said *something* similar to cause her to have this fear." (DE: 57, p. 5)(Emphasis added). If D.R. is allowed to testify her entire testimony will be speculation and belief. D.R.'s flawed recollection and subjective belief are inadmissible into evidence and will most certainly confuse a jury as to the purpose of this testimony. Additionally, the government is seeking to elicit testimony that the Defendant attempted to contact D.R. the following day. There is no evidence to support this. By the government's own representation, D.R. stated that she gave the Defendant her phone number but does not believe he gave her his. D.R. cannot recall the specifics of the text that she allegedly received the following day, which has also not been produced. Since she did not take the Defendant's number and cannot recall the language in the text she cannot testify definitively that it came from the Defendant. Furthermore, the calls that she "believes" came from the Defendant were from a restricted number (Gov't Disco. F.B.I. 302, p.3 Bate Stamp: US0195798) and no one either spoke or identified themselves. No reasonable jury could find that the Defendant made an improper advance toward D.R. or attempted to contact her the following day.

The court must also consider whether the Defendant was properly identified by D.R. D.R. advises that she only recognized the Defendant after this case received local media attention. As such, this evidence is inadmissible under prong II.  On March 16, 2021, Special Agents Bobbitt and Gibson responded to the residence of D.R. and questioned her regarding the 2014/2015 encounter she allegedly had with the Defendant. D.R. "read on Snapchat and Instagram that *the* officer had been arrested." (Gov't Disco. F.B.I 302, p.3 Bate Stamp: US0195797) (Emphasis added). It is unclear whether D.R. was even presented a photo-line up to identify the Defendant and, if so, if it was conducted in a proper manner in accordance with U.S. Department of Justice Eyewitness Identification for Conducting Photo Arrays. Notwithstanding, even if a photo

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue, Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

identification was made and the proper protocol and procedure was followed, any identification would be impermissibly tainted and would be subject to a motion to suppress pursuant to Federal Rule of Criminal Procedure 12, Subsection 3(C).

The witness advised that she only recognized the officer five (5) years after their alleged encounter because she saw he had been "arrested" on social media. Her identification of the Defendant was not only remote in time but was entirely based on seeing his arrest on social media. Accordingly, she was predisposed to believe that he was the officer she encountered and that he was guilty of an offense. "The Supreme Court of the United States recently clarified that due process protection is triggered only when the suggestiveness results from law enforcement action. *700 Perry,* 132 S.Ct. at 725–28. The Court in *Perry* explicitly noted that "what triggers due process concerns is police use of an unnecessarily suggestive identification procedure, whether or not they intended the arranged procedure to be suggestive." *Id* at 721. *See also*, *United States v. Lewis*, 838 F. Supp.2d 689, 700 ("…[u]nder the circumstances presented here, the Court concludes that detectives used an unnecessarily suggestive identification procedure with regard to… whether intentional or not. Having already concluded that [the witness'] identification bears no independent indicia of reliability, Defendant Theron Lewis' Motion to Suppress is GRANTED…")

With regard to D.R.'s identification of the Defendant there are one of two possible scenarios each of which result in an impermissibly suggestive identification. The first scenario is that D.R. saw the Defendant being arrested on the news and identified him. That identification would not be admissible as it took place five (5) to six (6) years after her limited encounter and would be based on the Defendant already being arrested and indicted on the pending charges. The second scenario is that the Agents provided D.R. with a lineup wherein she identified the Defendant. For the same reasons, this identification is invalid. D.R. had already advised that she

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

had seen the Defendant on social media being arrested. Any photo identification at that point would be of the person she saw being arrested and not necessarily the officer she encountered at Miami Lakes Hialeah Highschool over five (5) years prior.

Furthermore, the introduction of any testimony of D.R. would be speculative and wildly prejudicial. The evidence has no probity toward a relevant matter and would imply to a jury that the Defendant wanted to engage in some improper interaction with D.R., high school student. Furthermore, the Defendant would be prejudiced in that the encounter was so remote in time that it would be impossible to properly rebut the allegations. Under all three prongs of analysis this evidence must be excluded.

### E.   Evidence Related To A.M.R., A.M., K.H., V.P.[8]

In addition to the testimony of D.R. as to her alleged encounter with the Defendant, the government is also seeking to introduce the testimony of several third parties that D.R. "told" about the incident. Under the first prong of the *Huddleston* analysis the court must determine what relevance this testimony would have to a material fact. Specifically, proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). The testimony of multiple extrinsic witnesses who will offer nothing more than hearsay testimony about an encounter with a police officer by D.R. does not have any relevance to the offenses charged. The third-party witnesses are unable to offer anything pertaining to identity, motive, opportunity, intent, preparation, plan, knowledge, of absence of mistake. Rather, they are being called to prop up the impermissible testimony of D.R. The government is using the peripheral witnesses with no direct knowledge to suggest that by virtue of D.R. mentioning an

---

[8] The arguments in opposition to the collateral 404(b) witnesses related to D.R.'s alleged encounter with the Defendant are all similar and therefore will be addressed jointly in this subsection.



RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue, Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

encounter with a Hialeah Police Officer, it is true, and *ipso facto* that it was the Defendant and that his conduct was improper or her subjective feelings accurate.

Moreover, the testimony of A.M.R. and V.P. is hearsay. Their testimony provides no other function than to attempt to support the truth of the matter asserted- which is that D.R. had this encounter with the Defendant, a fact completely unknown to them. With regards to K.H. and A.M., who are alleged to have been on the scene when the encounter occurred, the government has offered nothing to suggest that the Defendant was identified by these witnesses. Additionally, their testimony as to what D.R. may or may not have told them is also hearsay.

If the government is allowed to proceed with the 404(b) evidence relating to D.R., the jury will be inundated with five (5) additional witnesses, none pertaining to the offenses charge, most providing hearsay and bolstering testimony, which the Defendant has no ability to rebut due to the significant passage of time. Moreover, the Defendant would be forced to combat a subjective belief of a witness, who felt "that the officer wanted her sexually." (DE: 57, p. 6). The relevance of this evidence is nil, the proof that this encounter even occurred is tenuous, and the prejudice to the Defendant if it is admitted is significantly more than its probative value.

## <u>EVIDENCE SOUGHT TO BE INTRODUCED PURSUANT TO FEDERAL RULE OF EVIDENCE 413</u>

1. **Alleged sexual encounter with T.G.**

2. **Consensual sexual encounter with L.C.**

I.     <u>**FEDERAL RULE OF EVIDENCE 413**</u>

"In a criminal case in which the defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413. In considering the introduction of



uncharged extrinsic evidence pursuant to Rule 413 the court must first find that (1) "the defendant is accused of an offense of sexual assault," (2) "the evidence proffered is 'evidence of the defendant's commission of another offense of ... sexual assault,' " and (3) the evidence is relevant. *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998). See also; *United States v. Pilati*, 2007 WL 9684476 (ND Alabama); *United States v. Brimm*, 608 F. App'x 795 (11th Cir. 2015). Most importantly, to ensure a potential conviction of the defendant is based on the facts proven as to the offenses charged and is not based just on the government's ability to introduce collateral uncharged offenses and secure a verdict based on a cumulative effect, the court must employ the balancing test prescribed by Fed. R. Evid. 403. "If the evidence meets the [first three] requirements, the court must next balance the probative value against the danger of unfair prejudice under Rule 403. *See also Guardia*, 135 F.3d at 1328 ( "district court also properly concluded that the Rule 403 balancing test applies to evidence submitted under Rule 413.")

## VII.   FED. R. EVID. 413 IS INAPPLICABLE TO THE ALLEGED VICTIM IN COUNT I OF THE INDICTMENT (M.D.)

Before addressing each of witnesses the government is seeking to introduce through Rule 413, the Defendant first offers his objection to any Rule 413 evidence being introduced pursuant to count I of the Indictment pertaining to alleged victim, M.D. The substantive allegations against the Defendant in count I are:

> "The defendant asked Victim 1 to stand up and turn around, telling her he wanted to look at her "ass," and threatened to arrest her if she did not remove her shorts and underwear. She complied with this demand, and the defendant removed his gun belt and moved closer to her, and touched his genitals from outside his pants. He next asked her to remove her shirt and bra. Fearful that he was going to rape her, Victim 1 declined in a forceful tone and told him that her girlfriend was waiting outside for her. The defendant said 'Oh, I though (sic) you wanted to fuck,' and said she was lucky because he 'was a cool cop.' He told her she was free to go, and then brought her out the front door of the substation and told her not to return to Hialeah." (DE: 37, p.4)

23

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

Even if we accept the representation of the government as to the allegations pertaining to M.D., they still fail to meet the requirements under prong I of the Rule 413 analysis. Under the *Brimm* metric, the first consideration for the court is whether the defendant is "accused of an offense of sexual assault…" This is both a factual and legal determination. The government has charged the Defendant with violation of 18 U.S.C. §242 for willfully depriving victims of the right to be free from unreasonable searches and seizures by a person acting under the color of law. Although the offense charged is not a sexual assault, Rule 413 can still apply simply by the court reviewing the facts of the allegations and determining it does pertain to a sexual assault. A review of the facts reveal that Rule 413 applies to both victims 2 and 3, but does not apply to M.D.

Subsection (d) of Fed. R. Evid. 413 defines sexual assault for purposes of the introduction of collateral evidence.

Definition of "Sexual Assault.": In this rule and Rule 415, "sexual assault" means a crime under federal or under state law (as "state is defined in 18 U.S.C. §513) involving:

(1) any conduct prohibited by 18 U.S.C. chapter 109A[9]
(2) contact, without consent, between any part of the defendant's body- or an object – and another person's genitals or anus;
(3) contact, without consent, between the defendant's genitals or anus and any other part of another person's body;
(4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
(5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

A strict reading of the rule and application to the facts at bar preclude the introduction of any of the proposed collateral offenses to support the charge against M.D. The facts presented by the government regarding M.D. do not qualify as a sexual assault. Even in the light most favorable to the government, the encounter, while unpleasant, would not meet the legal definition under Rule

---

[9] 18 U.S.C. 109(A) cross references §§2241-2248 none of which are applicable to the matter *sub judice.*



413(d). The Defendant is not alleged to have had contact with M.D. In fact, in all the multiple accounts of this interaction that are included in the government's pleadings and the discovery provided, there is no suggestion that the Defendant ever touched M.D. Certainly the government is free to pursue this as a substantive charge under 18 U.S.C. §242, but there is no reference to "color of law" or a "civil rights violation" within the definition of "sexual assault" as contained within the text of Rule 413. The application of the law of statutory construction thereby precludes the government from seeking to introduce prior sexual assaults through Rule 413 on an offense that is not a sexual assault.

In *United States v. Adleta*, 2013 WL 4734824 (11th Cir. 2013) the Defendant argued that the proposed Rule 413 evidence was inadmissible because the Government charged Defendant with violating 18 U.S.C. § 2423(a) by knowingly causing the transportation of a minor in interstate commerce with the intent that the minor engage in criminal sexual activity. *Adleta* contended that the charge fails to trigger the propensity inference exception because it does not constitute an accusation of "sexual assault" or "child molestation" as defined by Rules 413 and 414. Notably the court allowed the evidence relying on government's representation that it planned to meet its *mens rea* requirement by introducing evidence that Defendant intended to—and allegedly actually did—place "his penis in the hand and in the mouth of three-year-old V1 when she arrived in Oklahoma, as charged in the indictment."

This case is instructive to this court because it can be so readily distinguished from the pending case. The government cannot, and does not plan to, introduce evidence that the Defendant engaged in a sex act with M.D. in violation of either State or Federal law. Rather, they have brought forth an indictment charging the Defendant with an unlawful seizure and violation of M.D.'s civil

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

liberties. While the facts alleged meet a *prima facie* showing for that offense, they also exclude it from a sexual assault preventing the introduction of any extrinsic evidence pursuant to Rule 413.

Additionally, in the matter of *United States v. Courtright*, 632 F.3d 363, 368 (7th Cir. 2011) the appellate court found error in the admission of the Rule 413 evidence of the defendant's prior state court conviction for sexual assault because the defendant was charged with receipt and possession of child pornography- not a sexual assault. In doing so, the court took issue with the government's broad interpretation of the language of Rule 413.

> "In admitting the evidence, the district court interpreted the word "accused" broadly, holding that Rule 413 is triggered when a defendant has been verbally accused of sexual assault during the course of an investigation into a separate offense. Courtright takes issue with this interpretation of Rule 413, arguing that Rule 413 applies only when a party has been charged with an "offense of sexual assault" in the indictment.
>
> We do not agree with the district court's reading of Rule 413. The district court's interpretation was based on the fact that Rule 413 uses the word "accused" instead of "charged" to indicate when it is triggered. The government defends the district court's reading by noting that, because the rule drafters use the word "charged" elsewhere, the use of the word "accused" in this instance should be given broader effect. We believe the government makes too much of this distinction—at the time Rule 413 was drafted (and today), the word "accused" was often used in a technical sense to describe someone who was charged with a crime. *See Black's Law Dictionary* 22–23 (6th ed. 1990) (defining "accuse" as "to bring a formal charge against a person"); *Webster's Third New International Dictionary* 14 (1986) (defining "accuse" as, among other things, "to charge with an offense judicially or by public process"). There is nothing in the text or committee notes of Rule 413 to indicate that the word "accused" was used in a broader fashion."

While the government is understandably fond of Rule 413 and all its benefits to their case, in the instance of count I, M.D., it is not applicable.

26

**A. <u>Evidence Regarding T.G.</u>[10]**

By the government's own admission, the evidence pertaining to T.G. relies on the testimony of the alleged victim, T.G. about an incident that allegedly occurred over six (6) years ago and the self-serving hearsay testimony of T.G.'s mother. [11] Accepting the government's representation as to how this evidence will be presented, the Defendant concedes it will meet the necessary elements of prong 1 and 2 of the analysis in that the Defendant is alleged to have engaged in a sexual assault with Victims 2 and 3 and the collateral evidence of his encounter with T.G. is also an alleged sexual assault. That said, the evidence fails under the remaining prongs of the analysis as it is not relevant to a particular fact and is substantially more prejudicial than probative.

The evidence sought to be introduced is of an encounter between the Defendant and the alleged victim wherein she claims the Defendant forced her to perform oral sex on him. The government has once again merely listed the possible things this could be relevant to prove with no specificity. Additionally, this incident does not have any relevance to proving the actual charges. The very nature of the offense for which the Defendant is charged limits the need for introduction of extrinsic evidence under 404(b).

That said, the government correctly identifies that Rule 413 may be used to show propensity of the defendant to commit a criminal act; however, that is still subject to the court's

---

[10] The government is seeking introduction of the collateral evidence of T.G., L.C., and E.R. under both Fed. R. Evid. 413 and 404(b). Although different metrics on admissibility apply, the standard under 413 is significantly lower. Should the court find the evidence inadmissible under 413 it would be similarly inadmissible under 404(b). Nevertheless, while previous counsel offered no objection to 413, he did object under 404(b). The Defendant adopts previous objections to the admissibility of T.G., L.C. and E.R. evidence under 404(b) and incorporating arguments previously offered in this pleading.

[11] For purposes of brevity, the Defendant will adopt and accept the factual representation of the government's pleading for purposes of this objection.



balancing of the probative value against it prejudicial effect. In this instance the prejudice to the Defendant is significant. The encounter in question took place over six (6) years ago. The Defendant is no longer in a position to properly defend the allegation. The Defendant lacks the ability to present potentially exculpatory evidence or even alibi evidence. He is now faced with an allegation that he engaged in a heinous sexual assault "sometime in late 2014 or very early 2015." (DE: 37, p. 7) That is impossible to rebut. The government will get all of the benefit of suggesting to the jury that the Defendant is a "bad man" who has a history of assaulting defenseless women, without the Defendant having any ability to defend himself.

Furthermore, the government intimates that there is potential inculpatory DNA evidence, but conveniently that evidence was never found or produced. According to the government, after the Defendant forced T.G. to perform oral sex the Defendant ejaculated onto her t-shirt. This shirt was then allegedly discarded in the nearby lake. The lake was dredged but the search failed to produce the shirt. Once again, the Defendant is placed in the impossible position of defending alleged potential DNA evidence that conveniently could not be located and cannot be independently tested.

Finally, when assessing the probative value of the evidence the court may look to the reliability of the evidence proffered. "District courts "retain the discretion to exclude any type of unreliable or prejudicial evidence." *United States v. Pepin,* 514 F.3d 193, 204 (2d Cir.2008) (citing to *United States* v. *Fell,* 360 F.3d at 135,145 (2d Cir. 2004). In this instance, the allegation by T.G. and her proposed testimony lack reliability and therefore this court should exercise its discretion and exclude it. In addition to a delayed reporting, the identification of the Defendant is fatally flawed for several reasons.

28

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

First, and like A.G. and D.R. above, the identification of the Defendant comes after T.G. sees media coverage of the Defendant's arrest. This, in and of itself, would make any subsequent identification problematic; however, compounding this issue is the fact the witness is presented with a single photograph of the Defendant in violation of the United States Department of Justice's Eyewitness Identification Procedures for Conducting Photo Arrays https://www.justice.gov/archives/opa/press-release/file/923201/download. In fact, the manner in which T.G. was presented the photo of the Defendant violates nearly every safeguard and protocol outlined in DOJ procedures. A single photograph of the Defendant was presented to the witness after it was discussed that she saw the Defendant in the media- *being arrested*. Also, by all accounts, no third-party administrator was used and the requisite instructions (which are more applicable to a proper array than a single image) were offered. This is particularly relevant in the instance of T.G. and the consideration of admitting evidence related to her because there is no independent corroboration of her account. The evidence the government is seeking to introduce is based on her tainted identification of the single photograph of her alleged assailant from years prior. Even if the court were to admit the testimony of T.G.'s mother to offer a corroboration that T.G. told her about the encounter at or around the time it occurred, this would still fail to cure the identification issue. Perhaps most importantly, and defeating of any probity, is that the identification is also not definitive. A review of the "lineup" photo (Gov't Discovery Bate Stamp US000073) reveals that T.G.'s identification is unsure. In the handwritten notes by T.G. it says "looks like him. Younger though." That is not a positive identification.[12]

---

[12] During the initial interview with HPD in June of 2015, T.G. was presented a more proper lineup where she apparently identified the Defendant. It is unknown if the officers from HDP followed proper (Photo Array protocol Gov't Disco Bate Stamp U0005395); however, the multiple identifications, following varied protocol further confuses the issue and limits the probative value of T.G.'s testimony.

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

In considering the admission of this evidence under Rule 403 the court may look to its reliability, or in this case lack thereof. Introduction of this evidence will not only prove more prejudicial that probative but will cause undue delay. The evidence the government is seeking to introduce accuses the Defendant in no uncertain terms of raping a minor. Notwithstanding the inherent prejudice of such an accusation, defense counsel would be ineffective if they did not spend significant time exposing the issues in reliability and flaws in this evidence through cross examination. The unintended consequence of the introduction of T.G.'s testimony is a multi-day delay wherein the jury will become focused on a salacious, unsubstantiated, accusation and ultimately becoming confused as to the issues at bar.

## B. <u>Evidence Regarding L.C.</u>[13]

The government is seeking to introduce evidence of what they characterize as an assault of L.C. Specifically, the government alleges that "[the Defendant] took Victim 5's head and neck in his hands and forced it to his genital area, and holding onto her head, had her perform oral sex on him. At some point while she was in the defendant's car…[she] started the recording feature on her phone and left it on the seat producing an audio recording of a portion of their encounter." (DE: 37, p. 10). This recording has been produced in government discovery and is Bate Stamp US0186498.

---

[13] On October 1, 2021, the government placed defense counsel on notice of a recent arrest of this witness for a domestic battery. Of note, the alleged victim in the DV battery case is also a law enforcement officer. There remains outstanding discovery from the State of Florida in this matter, and the government is awaiting returns on F.B.I. subpoenas. The government offered to stipulate to an extension of time on the deadline for the Defendant to file this objection. In the interest of efficiency, undersigned agreed to file by the October 7, 2021, deadline while reserving the right to supplement the pleading or file a separate pleading if necessary when full discovery has been provided. The government stipulates.

30

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

The encounter with L.C. fails under the second prong of the court's analysis for admissibility of Rule 413 requiring (2) "the evidence proffered is 'evidence of the defendant's commission of another offense of ... sexual assault." *Id*. The encounter with L.C. was a consensual encounter. It was one of many consensual encounters between the Defendant and L.C. during the course of their relationship. While the government will certainly argue that is a factual determination to be made by the jury and that no "preliminary finding is required by the court under Rule 104(a)." (See *Huddleston* at 689), the court cannot simply accept the government's proffer that this is a sexual assault- especially when their own discovery contradicts that assertion. Further, it is well within the court's discretion under Rule 403 to consider the reliability of the evidence. *Supra*.

In this instance, the allegation that this was anything other than a consensual relationship between two lawful adults is refuted by the evidence. Additionally, the government's position that the mere fact that the Defendant was a police officer and therefore any sexual encounter is a non-consensual submission to authority is a misinterpretation of the law.

Under Rule 403 the court needs to consider not just the prejudice to the Defendant, but also delay, and the potential to confuse the jury. The evidence related to L.C. consists of several interviews and statements as well as a graphic and an inherently prejudicial audio recording. The additional time required for the introduction and rebuttal of this evidence will likely add significant time to the already lengthy trial. Moreover, while "relevant evidence is inherently prejudicial [and] it is only unfair prejudice, substantially outweighing probative value, which permits exclusion…" (*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)) this evidence is only relevant if it is in fact a sexual assault, which it is not. Based simply on the discovery provided, without a single question on cross examination even being posed, no reasonable jury could find that this was

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

anything other than a consensual encounter between adults. Accordingly, after lengthy testimony where the true nature of this encounter is displayed, the jury will need to be instructed to disregard the testimony of L.C. causing significant delay and confusion.  The jury will inevitably be confused by the purpose of this evidence and it will ultimately prove far more prejudicial than probative.

## VIII.   DELAY AND CONFUSION

Although the Defendant feels strongly that both the evidence proffered pursuant to both Rule 404(b) and Rule 413 is inadmissible for a variety of reasons, the final considerations for this court in assessing this evidence under Fed. R. Evid. 403 is delay and confusion. The government has indicted the Defendant on three (3) counts. Each count pertains to an individual alleged victim, with a single alleged encounter in violation of 18 U.S.C. § 242. The facts of each incident are limited. The facts of each incident are relatively simple. In their "Certificate of Trial Attorney" attached to the superseding indictment filed May 27, 2020 (DE: 25, p.3), the government advised that they anticipated this trial would take six (6) days to complete. The government has since filed its Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 413 and 404(b) (DE: 37) which includes one (1) 404(b) witness, 72 videos of varying length and quality, and two (2) 413 witnesses. The government then subsequently filed "Government's Supplemental Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (DE: 57) which includes an additional seven (7) 404(b) witnesses that they wish to use to bolster their cases through hearsay testimony. In total, there is an 82:3 ratio in favor of extrinsic uncharged evidence to actual alleged victims on which the grand jury indicted the defendant. Presumably based upon the need to use these collateral witnesses, the government as recently as the August 23rd, 2021, status conference advised that they anticipated this trial to now last six (6) weeks. The government is understandably seeking to present the strongest case possible. That said, this prosecution by

32

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

cumulative effect will extend the trial period five (5) times longer than needed to prosecute the indicted counts is the definition of undue delay.

Finally, if the court were to admit the Rule 404(b) and Rule 413 evidence the Defendant would be entitled to special jury instruction to limit the prejudice implicit to this evidence. See *United States v. Lockart*, 732 Fed.Appx. 842, 845 (11th Cir. 2017). The complexity needed for that instruction, however, would serve no mitigating effect and would only confuse the jury. To mitigate any prejudicial effect, the court would be compelled to parse out through a curative instruction which witnesses' testimony could be considered for propensity and which witnesses' testimony should only be considered to support relevant facts. The potential for juror confusion is high. More frighteningly, a conviction based not on the evidence but on a muddled presentation of uncharged "bad acts" is likely. A jury of twelve citizens will need to be instructed, then process, and comprehend, complex rules of evidence. Those same issues have been briefed now by six (6) attorneys, through approximately 105 pages (and counting) of legal pleadings. With all due respect to this court, such a magical jury instruction does not exist.

## IX.    <u>CONCLUSION</u>

Throughout their pleadings the government implores the court to allow this evidence while lamenting their impossibly high and difficult standard of proof. "The government *needs* the proposes Rule 404(b) [and Rule 413] evidence because none of the actual sexual abuse committed by the defendant against the victims in the three charged counts was witnessed by third party or captured on Substation 5's surveillance cameras, and each victim undoubtedly will be thoroughly cross examined." (DE: 57, p. 10) (Emphasis added). Here the government and the defense agree. The case as indicted is weak. There is limited, to no, evidence. The witnesses have provided multiple versions of their accounts, lack credibility, and are tainted with significant motive, interest

RATZAN & FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

and bias. Nevertheless, the government chose to bring these three (3) counts to the grand jury. The government chose this, notwithstanding a comprehensive prior investigation that resulted in no charges to Jesse Menocal. In doing so, the government accepted their facts, and accepted their burden. The Defendant recognizes that the rules and precedent governing the admission of extrinsic evidence, both under Rule 404(b) and Rule 413, are liberal. Nevertheless, the Defendant submits that when applied to the facts of this case the court should favor exclusion.

Prior acts or extrinsic evidence should play a supporting role in the government's case. In this instance, by its own admission, the collateral evidence is essential and significantly more substantial than the evidence of the actual offenses charged. Allowing this cumulative evidence to be presented to a jury permits the government to prosecute by inuendo and conjecture and will likely result in a confused, and thereby flawed, verdict.

**WHEREFORE,** the Defendant, by and through undersigned counsel, hereby files this opposition and objection to the evidence sought to be introduced pursuant to the Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 413 and 404(b) (DE: 37) and Government's Supplemental Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (DE: 57) and hereby adopts and renews his previous request for an evidentiary hearing. (DE: 40). Pursuant to local Rule 88.9 undersigned confirms that they have discussed this pleading with the government and the foregoing represents issues that in good faith could not be resolved.

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFY** that a true and correct copy of the foregoing was tendered via

CM/ECF to the Clerk of the Court, this 7th day of October, 2021.

Respectfully submitted,

RATZAN AND FACCIDOMO, LLC
ATTORNEYS AT LAW
2850 Tigertail Avenue
Suite 400
Miami, Florida 33133
305 374-5730
305 374-6755 Fax
mycki@rflawgroup.com
jude@rflawgroup.com

By:    *s/ Jude M. Faccidomo*
        Jude M. Faccidomo, Esq.
        FL. Bar: 0012554

By:    *s/ Mycki Ratzan*
        Mycki Ratzan, Esq.
        FL. Bar: 915238

RATZAN &
FACCIDOMO LLC

2850 Tigertail Avenue,
Suite 400, Miami, FL 33133
Tel. 305.374.5730
Fax. 305.374.6755
www.rflawgroup.com